HISTORIC ESTATES, INC., Appellant, *v.* UNITED PAPER BOARD COMPANY, Respondent.

Third Department, July 2, 1940.

*D. William Leider* [*Harold I. Cammer* with him on the brief], for the appellant.

*Tashof & Smith* [*Wyman S. Bascom* and *Harry Smith* of counsel], for the respondent.

FOSTER, J.  By this action plaintiff sought a judgment enjoining the defendant from using the waters of a spring.  The defend-

ant has recovered a judgment dismissing the complaint, and affirmatively adjudging that defendant has an easement until March 31, 1946, to draw water from the spring in the manner it is now doing. From this judgment plaintiff appeals.

Plaintiff's property consists of a tract of about ninety acres of land in the town of Greenwich, Washington county, N. Y. Upon it are located a manor house, tenant house, swimming pool and other structures. The defendant operates a mill for the manufacture of paper board, and also has several houses on its premises immediately adjacent to those of the plaintiff. The spring in question is situated in an open field on the northerly part of plaintiff's premises, and about four hundred feet from the mill and houses of the defendant. It is housed in a brick structure known as a spring house, about six feet wide and eight or nine feet in height. Upon the floor of the spring house there is a pump powered by electricity for pumping water to both plaintiff's and defendant's premises. The water is piped to the manor house, swimming pool and tenant house on plaintiff's property, and also to the four houses on defendant's property, and to the mill for drinking purposes.

Defendant acquired its claim to the use of the water of the spring through a series of negotiations, partly oral and partly written, with prior owners of plaintiff's premises. These premises were formerly owned by Pine Needles Corporation, of which Clarence T. Birkett was the president and owner of all of its capital stock. By letter written under date of September 5, 1924, Mr. Birkett confirmed an arrangement with defendant by which the latter was permitted, in consideration of furnishing electric current to pump the water, to supply its premises with water from the spring. Later a formal resolution, dated April 27, 1925, was passed by the Pine Needles Corporation permitting the defendant to put a new cement floor in the spring, to furnish a pump of larger capacity, and to do such other things as would tend to keep the water pure and wholesome. This resolution also fixed defendant's term for the use of water at twenty-one years from April 1, 1925. Following this and on May 21, 1925, Pine Needles Corporation agreed by letter to give defendant a continuous right to enter upon the property now owned by the plaintiff and to maintain the water supply line then running between the two properties. It should be added that these letters and the resolution were not attested, acknowledged or recorded.

Defendant performed considerable work and expended a substantial sum of money in connection with improvements to the spring and in reliance upon its agreement with the Pine Needles

Corporation. It laid pipes, constructed a cement floor, installed two pumps at different times, repaired the roof of the spring house, provided electric heaters to protect the pumps from freezing, and furnished electric current to pump the water, either from a public utility or its own plant, during all of the period it has used the water. Indeed, it had what amounted to practically complete control of the spring, even to keeping the spring house locked. There can be scarcely any question that as between the defendant and the Pine Needles Corporation the former had equities arising from the agreement and improvements made in reliance thereon which were enforcible. (*City of New York* v. *N. Y. & S. B. Ferry & S. T. Co.*, 231 N. Y. 18.)

The question here is whether the rights of a third party have intervened so as to destroy these equities. The Pine Needles Corporation, controlled by Clarence T. Burkitt, conveyed the premises in 1927 to another corporation called Pine Needles Estates, Inc. This corporation subsequently lost title on a foreclosure sale and the premises were acquired by one Howard Birkett. After his death they were conveyed by Laura R. Birkett, individually and as executrix of his will, to the plaintiff. The deed to plaintiff, dated September 22, 1936, makes no mention or reservation of any right or interest of the defendant. Negotiations for the purchase of the property in behalf of the plaintiff were carried on by one of its directors, Dr. Applebaum. His first visit to the property was in the early part of July, 1936, and his second visit was made about two weeks later. He admits that he saw the spring house, and was told that water was supplied to the estate from the spring by means of a pump, and that the pump was operated by electricity. He did not inquire as to the source of the electricity which operated the pump but had been told previously that electricity to the estate was furnished by a power company. He did not inspect the spring house because he claims it was difficult to get down to it at that particular time. At the time there was a pole line, consisting of two or three poles, which carried wires leading to the spring house from defendant's mill, and the witness admitted that he saw this pole line. He also stated that he did not know, nor did any one intimate to him, that any third party had an interest in the spring. Before title was closed plaintiff obtained a title search and had a survey made of the premises. Neither disclosed any interest on the part of the defendant, unless the existence of the power line to the spring may be said to be indicative of such interest.

This resumé contains, we think, the pertinent facts in the case, and the question arising therefrom is whether or not plaintiff

had constructive notice of defendant's interest in the spring. The right to take water from a spring on the land of another is an easement (*Saratoga State Waters Corp.* v. *Pratt*, 227 N. Y. 429), and as against the previous owner defendant undoubtedly had an easement for a fixed period. Plaintiff raises the point that under section 243 of the Real Property Law the defendant did not possess an easement because the agreement upon which it relies was neither acknowledged nor attested. This section, however, applies only to a grant in fee or a freehold estate. Certainly the agreement here did not constitute a grant in fee, and a freehold estate is one of inheritance or for life (Real Prop. Law, § 33), neither of which was created by the agreement here.

This proposition, however, is not at all decisive. Whether or not the agreement between the defendant and Pine Needles Corporation created an easement in the strict sense of the term, it did establish rights enforcible between the original parties, and against a purchaser with notice. (*Rochester Poster Advertising Co., Inc.*, v. *Smithers*, 224 App. Div. 435.) The issue of notice must decide this case. A purchaser of property may assume that no easements are attached thereto which are not of record except those which are open and visible. There must be an apparent sign of servitude, something to suggest to the purchaser that one estate is servient to the other. (*Butterworth* v. *Crawford*, 46 N. Y. 349.) Unless there is an apparent mark or sign which would indicate servitude upon inspection, or cause a prudent purchaser to make inquiry, the rule of constructive notice does not apply.

On this issue the trial court has found that plaintiff's agent did not and could not see the pipe line running from the pump to defendant's property when he inspected the premises because it was connected underground. Apparently an inspection of the interior of the spring house would not have apprised plaintiff's agent of the direction of such pipe line. If he had attempted such inspection, however, he would have found the spring house locked, and further inquiry would have led to the fact that the key to the lock was in the hands of defendant's employees, and that defendant was actually in possession and control of the spring house. What a prudent purchaser would have done under the circumstances disclosed here is largely a question of fact. When it is considered that plaintiff was about to purchase a large country estate, not connected with a municipal water supply, it is not at all unreasonable to find as a fact that a prudent purchaser would have insisted upon inspecting more closely the only source of water available, especially when that source was made available by power and housed in a substantial structure. Moreover, there was the power

line running almost directly to defendant's premises. The slightest inquiry would have led to the discovery that defendant was furnishing the power. The trial court has found as a fact that the failure of plaintiff's agent to inspect and inquire more thoroughly as to these matters operated to charge plaintiff with constructive notice of defendant's interest. We think the evidence sustains this view. Plaintiff's contention, that in any event, the defendant has violated the agreement it claims is not supported by evidence of any material violation.

The judgment should be affirmed, with costs.

HILL, P. J., HEFFERNAN and SCHENCK, JJ., concur; BLISS, J., dissents.

BLISS, J. (dissenting). The evidence did not disclose any physical facts with relation to the premises that would cause a prudent person to make inquiry and there was no notice either actual or constructive of the existence of the alleged easement.

Judgment affirmed, with costs.