Louis B. Jacobson, Plaintiff, *v.* Luzon Lumber Co., Inc., et al., Defendants.

Supreme Court, Trial Term, Sullivan County, April 30, 1948.

184

*Lazarus I. Levine* for plaintiff.

*Samuel Penski* and *Bernard Wiess* for defendants.

BERGAN, J.   Many of the leading cases upon which, in New York, the doctrine of implied easement on lands has developed have arisen from artificially created water rights of one kind or another, plainly visible under reasonable inspection.

*Lampman* v. *Milks* (21 N. Y. 505), which is frequently cited as basic authority, was a case in which a drainage ditch dug in one part of land for its benefit was found so to benefit another part in the water thus flowing to it as to create a right of continuance.   *Historic Estates, Inc.,* v. *United Paper Board Co.,* (260 App. Div. 344) is another good example.

But it is quite clear that the doctrine is equally applicable to roads and rights of way where the facts meet the general pattern.   (*Alleva* v. *Tornatore,* 254 App. Div. 525, affd. 279 N. Y. 770; *Kasper* v. *Moore,* 54 N. Y. S. 2d 685.)

Perhaps the most simple, and at the same time complete, statement of this rule appears in the opening paragraph of the opinion of BROWN, J., in *Paine* v. *Chandler* (134 N. Y. 385, 387). It is this: " that when the owner of land sells a part thereof he

impliedly grants to the grantee all those apparent and visible easements which are necessary for the reasonable use of the property granted and which are at the time of the grant used by the owner of the entirety for the benefit of the part granted.''

There, the owner of two contiguous farms in Livingston County had obtained water from one led by a pipe to supply the barnyard of the other. When the farms came to different owners the man who had title to the spring cut off the supply. It was held that there was an implied grant of the right to use the water. The main point debated in the case was whether the nature of the easement was such that it would pass by implication only if, without it, the land for which it was claimed would be practically worthless, i.e., that it was a '' discontinuous '' easement.

But the court took a much broader view of the rule and held that it applies to artificial arrangements which openly exist and affect materially the value of the respective parts of the estate (p. 387).

Not only the benefit to the estate purchased will be considered but whether the easement is necessary to the full enjoyment of it (p. 392). The intent so to give and receive the benefit of such a subserviency will be drawn from the obviousness of the arrangements in plain view (p. 391).

The rule of '' strict necessity '' to which Judge PECKHAM referred in *Root* v. *Wadhams* (107 N. Y. 384, 391) applies where the title came from entirely different sources, and that case was by its own language distinguished from the rule of the *Lampman* case, as Judge BROWN was careful to point out in *Paine* v. *Chandler* (*supra*, p. 398).

In dealing with an easement for the use of water power '' necessity '' and '' full enjoyment '' were treated by the court as substantially synonymous terms in *Simmons* v. *Cloonan* (81 N. Y. 558). See, also, discussion of the principle involved when the same case was before the court nine years earlier (47 N. Y. 3). In draining surface waters from one part of commonly owned land to another, benefiting one part by the drainage and the other by the resulting supply of good water, the reciprocal rights and benefits were reciprocally enforcible against and in favor of subsequent different owners of the parts. (*Curtiss* v. *Ayrault*, 47 N. Y. 73.)

From these authorities and from those which follow them, it is apparent that the elements of the New York rule on implied easements are these: 1. The estates presently resting in the hands of different owners must formerly have been in unitary

ownership; 2. While so formerly held in one estate, a use must have been created by the owner either in which one part of the land was subordinated (made " subservient ") to another; or such a use made of the two parts as to create a reciprocal subordination; 3. The use made must be plainly and physically apparent on reasonable inspection; 4. It must affect the value of the estate benefited and must be necessary to the reasonable use of such estate.

Upon the facts presented by the plaintiff in this record which are substantially undisputed, I think there is a conformity with the pattern underlying the establishment of easements by implication, and that the plaintiff should have judgment. The test is, as was suggested in *Paine* v. *Chandler* (134 N. Y. 385, *supra*), a " right by implication " to " use ".

Prior to 1931 a common owner, Prince, held title to both the parcels involved in this action. By deed of May 25, 1931, he granted the parcel now owned by plaintiff to plaintiff's mother who is his predecessor in title. Three years later Prince conveyed the remaining parcel in which the easement by implication is claimed to defendants' predecessor in title. (Sept. 17, 1934.)

Since the structure erected on plaintiff's land occupied substantially all of the parcel conveyed by Prince in his deed of 1931, there can be little doubt that insofar as that structure was concerned and the use of the parcel now held by the plaintiff, the roadway on one side of it was used for the benefit of that parcel and the structure standing on it.

And it was conveyed by the common owner so circumscribed, and limited substantially to the area on which the structure stood, that necessarily an easement in the use of the driveway adjoining this parcel and which had been used in connection with the business structure on it, was intended by the grantor who retained the title to the driveway. The fact a back entrance to the cellar-way on the structure, as well as the cesspool and fuel tanks, would be accessible only through this driveway would suggest such an intention.

Besides this, there is proof that at least as early as 1902 and perhaps earlier, plaintiff's structure was used for business purposes and the driveway, then in common ownership with it, was used for loading goods and by vehicles in connection with the business on the smaller parcel. It was thus used at least for the 20 years that followed April 20, 1902, and there is no doubt that the " alley " described in connection with the use of the premises was the driveway in dispute.

Plaintiff argues that if the easement by implication exists it is absolute and not subject to restriction. I would not suppose that in any event the use made possible by the easement could be more extensive than the use that went on during the ownership of both parcels in the common estate with such expansion as is reasonably to be expected; but whether this is the rule or not, the subserviency of one estate to the other is a reciprocal thing, and carries obligation as well as rights to the beneficiary.

I think that the use to be made of this driveway by the plaintiff should not greatly exceed the use made of it in connection with the use of the building now owned by plaintiff prior to 1922. It may be used for loading and unloading through the side door, but trucks should not block the entrance to the driveway, and they should not interfere with the constant free ingress and egress of trucks and vehicles of the defendants and their customers at all times.

The loading and unloading operations requiring the use of this driveway should be reasonable in time and extent and if, in practice, it is found that defendants have actually been interfered with in the free use of their driveway, either numerical limitation on the number of vehicles to use the driveway will be imposed, or a requirement made that it be used after the usual business hours for defendants' property.

Counsel should try to agree on the terms and language of the judgment in this respect. If they cannot agree, they should submit to me in writing their suggestions of language which will carry into effect the spirit of this decision. Any such suggestion as to language will, of course, be deemed to be without prejudice to any position taken by either party feeling aggrieved and desiring to appeal. I think in the exercise of discretion that defendants ought not be called on to pay costs, but that plaintiff should have his disbursements.

Judgment for plaintiff accordingly without costs but with disbursements. Submit decision and judgment. The record and all exhibits may be obtained at this office by a representative of either party according to their convenience.