**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**John V. O'CONNELL and Jopat Realty
Corporation, Defendants-Appellees.**

**No. 523, Docket 73–2149.**

United States Court of Appeals,
Second Circuit.

Argued March 5, 1974.

Decided May 16, 1974.

Taggart D. Adams, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the Southern District of New York, and Gerald A. Rosenberg, Asst. U. S. Atty., on the brief), for plaintiff-appellant.

Frank J. Delany, Washington, D. C., for defendants-appellees.

Before LUMBARD, OAKES and TIMBERS, Circuit Judges.

LUMBARD, Circuit Judge:

The issue for decision here is a question of real property law of the sort rarely coming before this court. Claiming that it was the owner of easements by implication in two pieces of property located in Peekskill, New York, the United States commenced this action for a declaratory judgment, permanent and preliminary injunctions, and damages on January 4, 1973, in the Southern District of New York. Under Rule 65(a)(2), F.R.Civ.P., the hearing on a preliminary injunction was combined with the trial on the merits, and on March 20, 1973, a bench trial was held before Judge Duffy. He ruled in favor of the defendants, John V. O'Connell and the Jopat Realty Corporation and dismissed the government's complaint, D.C., 358 F.Supp. 925, and judgment was entered on April 30, 1973. This appeal by the United States followed. Since we find that the district court applied an erroneous rule of law, we vacate and remand.

## I.

Three parcels of land are involved in this dispute. Parcel A includes two lots. The major part of Parcel A is some 5.7 acres, bounded by Sherman Avenue on the north and Welcher Avenue on the south, which are the site of the Patricia Gardens housing project. The rest of Parcel A is a parking lot 100 feet by 150 feet located on the other side of Sherman Avenue. Parcel B is a lot 60 feet by 150 feet which is immediately east of the portion of Parcel A that is north of Sherman Avenue. Parcel B is also a parking lot. Parcel C is a private roadway about 50 feet wide and 550 feet long which connects Sherman and Welcher Avenues to the west of the project. Several apartments in the Patricia Gardens project front on this private roadway and the roadway provides access to two parking lots within the project.

All the land in these three parcels was originally owned by O'Connell or the Jopat Realty Corporation of which O'Connell is the majority shareholder. Sometime in 1958 O'Connell decided to build a housing project of duplex apartments called Patricia Gardens. In November 1958 he applied for mortgage insurance from the Federal Housing Administration (FHA) in connection with the project. In August 1959 O'Connell received a commitment for insurance

from the FHA. Apparently because of a then applicable FHA regulation, 24 C.F.R. § 232.17 (1959), a separate corporation, Patricia Gardens, Inc., was formed to build and operate the project. In April 1960 O'Connell transferred to Patricia Gardens, Inc. the project and the FHA commitment for 100 shares of common stock. The FHA held the preferred stock in the corporation. Sometime after this the land on which the project was to be built was conveyed to Patricia Gardens, Inc. There is no evidence in the record that Jopat, listed in the stipulation of facts as being the prior owner of this part of Parcel A, received any consideration for this land.

On July 7, 1960, Patricia Gardens, Inc. entered into a mortgage agreement with the County Trust Co. of Tarrytown, New York. The mortgage covered the land transferred to Patricia Gardens, Inc., and required it to follow all municipal ordinances in its use of the property. In January 1961 the directors of Patricia Gardens, Inc., for reasons which are unclear, authorized the company to acquire that part of Parcel A that was north of Sherman Avenue for parking space and to place it under the mortgage. From the record it does not appear whether Patricia Gardens, Inc., gave any consideration for this land nor does it appear that Jopat or O'Connell received any. On February 7, 1961, a spreader agreement was executed so that all of Parcel A became subject to the mortgage.

The City of Peekskill's zoning ordinance required that such projects be submitted to its Planning Commission for approval prior to construction. Under the ordinance in effect at the time the site plan for the project was approved by the Planning Commission, October 5, 1960, there had to be 1.5 parking spaces for every apartment, or 150 in all. The ordinance also required that the spaces be within 500 feet walking distance of the apartments and that the spaces be in the same ownership as the apartments and subject to a deed restriction, filed with the county clerk, binding the owner, his heirs and assigns to continue to maintain the required number of spaces throughout the existence of the project or until alternative spaces were provided.

Despite these provisions, the plan as approved provided for two lots within the project holding 46 automobiles, a lot on the north side of Sherman Avenue encompassing part of Parcel A and all of Parcel B holding 56 automobiles and spaces on the roadway that is Parcel C holding 50 automobiles for a total of 152 spaces. Parcels B and C were and are owned by either Jopat or O'Connell. The stipulation of facts state that Parcel B was owned by Jopat and Parcel C by either Jopat or O'Connell. O'Connell at trial, however, testified that he owned Parcel C and that either he or Jopat owned Parcel B and that there was not much difference in who owned it.

Even at this late date it is not clear why Patricia Gardens, Inc. was not given title to all the land used for access to parts of the project and parking spaces used in connection with the project. It is clear that local and federal officials did not complain about this severance of ownership. Local officials in letters did comment about the number of spaces but never the ownership. An employee of the planning commission said that no effort was made to see if the restrictions on land use necessary to ensure the continued availability of parking had been filed with the county clerk. No indication is given why FHA officials, who required that the land be surveyed, did not comment on this matter.

Construction of the project literally had rocky beginnings as outcropping of rocks forced modification of plans, caused delay, and created financial difficulties. These difficulties continued after Peekskill authorities issued certificates of occupancy and the FHA endorsed the mortgage for insurance in August 1962. During the period of 1963 to 1965 the mortgage note went into default. The mortgage had been assigned to the State of New York which in turn assigned it to the FHA under the insurance agreement. In 1967 the

FHA foreclosed and in 1968 the United States acquired title to Parcel A under a marshal's deed as the highest bidder at a foreclosure sale.

From the time tenants began occupying the buildings they used Parcel B for parking and Parcel C for access and parking. A brochure advertising the project showed Parcels B and C as integral parts of the project. There is no evidence that Patricia Gardens, Inc. ever paid O'Connell or Jopat any fee for the use of their land. Certainly the United States after it became owner never paid any fee for the use of the land. The fact that the United States did not own Parcels B and C apparently surfaced early in 1971. A letter was sent by an official of the Department of Housing and Urban Development to O'Connell, saying that a survey had disclosed that O'Connell or Jopat owned the land and asking if the land was for sale. O'Connell said that the land was available and said that its value was $50,000.00. In a later letter O'Connell asked if he could acquire Parcel A by private negotiation. He was informed that this was not possible. Negotiations on purchase of Parcels B and C evidently fell through, and in November 1972, O'Connell erected steel posts which prevented access to Parcel B by tenants of Patricia Gardens and threatened to do the same with Parcel C. This action followed.

## II.

■ The parties have assumed, and we agree, that state law, here New York's, governs this action. While we have held that federal law governs FHA foreclosure proceedings, United States v. Walker Park Realty, Inc., 383 F.2d 732 (2d Cir. 1967); United States v. Merrick Sponsor Corp., 421 F.2d 1076 (2d Cir. 1970), we see no reason for a rule of nation-wide uniformity in determining precisely what property the buyer at the foreclosure sale had purchased. This case is analogous to United States v. Certain Property Located in Borough of Manhattan, 306 F.2d 439 (2d Cir. 1962), in which we held that state law governs the determination of what property the United States took when it took all real property in an area by condemnation. There is no suggestion here as there was in United States v. Little Lake Misere Land Co., 412 U.S. 580, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973), that state law is hostile to the federal scheme. We, therefore, hold that New York law governs here. See Coos County Sheep Co. v. United States, 331 F.2d 456 (9th Cir. 1964). Cf. United States v. Doyle, 468 F.2d 633 (10th Cir. 1972); United States v. 1,078.27 Acres of Land, 446 F.2d 1030 (5th Cir. 1971), cert. denied sub nom. Galveston City Co. v. United States, 405 U.S. 936, 92 S.Ct. 945, 30 L.Ed.2d 811 (1972); United States v. Williams, 441 F.2d 637 (5th Cir. 1971). See generally Friendly, In Praise of Erie—And of the New Federal Common Law, 37 N.Y.U.L. Rev. 383 (1964). Since, as will be seen below, New York courts have not yet passed upon the questions presented by this case, we must exercise our "prophetic judgment" in determining what New York courts would do if faced with the problem. Cooper v. American Airlines, Inc., 149 F.2d 355, 359 (2d Cir. 1945).

## III.

■ As the Restatement of Property notes, creation of easements by implication is an attempt to infer the intention of the parties to a conveyance of land and the "inference drawn represents an attempt to ascribe an intention to parties who had not thought or had not bothered to put the intention into words, or perhaps more often, to parties who actually had formed no intention conscious to themselves." Restatement of Property, § 476, comment a, at 2978 (1944). The district court relied upon the four elements of implied easements which were first stated by Justice Bergan in Jacobson v. Luzon Lumber Co., 192 Misc. 183, 79 N.Y.S.2d 147 (Sullivan County Sup.Ct.1948), aff'd per curiam, 276 App.Div. 787, 92 N.Y.S.2d 537 (3d Dept.1949), aff'd mem., 300 N.Y. 697, 91 N.E.2d 724 (1950), and since repeated in other cases, e. g., McQuinn v. Tantalo,

41 A.D.2d 575, 339 N.Y.S.2d 541 (3d Dept.1973). These elements are: (1) The relevant parcels of land must have once been in unitary ownership; (2) A use must have been established in which one part or parcel of the land was subordinated to another; (3) The use must be plainly and physically apparent by reasonable inspection; and (4) The use must affect the value of the estate benefitted and it must be necessary to the reasonable use of such estate.

■ If this list of elements is not exhaustive, as is suggested by Chief Judge Cardozo's comment in In re City of New York (Northern Blvd.), 258 N.Y. 136, 147, 178 N.E. 321 (1932), that the question of easement implication is one of intention to be answered in light of all of the circumstances, then two more factors should be considered here. See also Restatement of Property § 476, comment b, at 2979 (1944). The first is that the conveyance in 1968 was by marshal's deed and was involuntary. The Restatement of Property says that in such cases it is more difficult to draw an inference that the parties intended to create an easement.[1] Restatement of Property, § 474, comment b, at 2973–74 (1944). In our opinion this factor is more than balanced by a second factor, the requirement in the Peekskill zoning ordinance which provided that the ownership of the parking spaces be the same as the ownership of the housing project. The parties here either knew or should

have known of this provision. It is reasonable to infer that the parties here intended that the owner of Parcel A would have easements in Parcels B and C since without such easements the project would not be in compliance with that provision of the Peekskill ordinance. Certainly there is no evidence in the record to suggest that anyone deliberately intended to violate the ordinance. The evidence only suggests that no authority in Peekskill tried to enforce the ordinance.

As far as the four elements listed in *Jacobson* are concerned, the district court found that the latter two elements of the test had been met. 358 F.Supp. at 927. Presumably the district court also found that the second element was met since clearly there had been a use established which subordinated Parcels B and C to Parcel A. The decisive factor in the district court's determination was its finding that the government had failed to show that the parcels had been in unitary ownership at the time the use arose. 358 F.Supp. at 927.

Easement by implication may arise when land under one ownership is divided into separately owned parts. Restatement of Property § 474 (1944). We assume, as did the district court, that the relevant conveyance for the purpose of determining whether there is an easement by implication here is the sale of Parcel A by foreclosure in 1968.[2] The

1. Appellees argue that there cannot be an implied easement here because the notice of public sale of Parcel A did not mention any implied easements in other land as they argue is required by 28 U.S.C. § 2002. We think that this failure to mention any easement at the foreclosure sale is only one fact to be considered in inferring the intention of the parties. We see no indication that the New York courts would not imply an easement in the context of a mortgage foreclosure. See Alleva v. Tornatore, 254 App.Div. 525, 5 N.Y.S.2d 479 (1st Dept.1938), aff'd mem., 279 N.Y. 770, 18 N.Ed.2d 860 (1939). The purpose of the public notice requirement of § 2002 is to inform the public of the nature of property to be sold so that it can be identified in the exercise of ordinary dili-

gence. The description need not be correct in minute detail. See Newman v. Jackson, 25 U.S. (12 Wheat.) 570, 6 L.Ed. 732 (1827); Breeding Motor Freight Lines, Inc. v. Reconstruction Finance Corp., 172 F.2d 416, 422 (10th Cir. 1949).

2. However, this assumption may be questionable. It can be argued that easements by implication arose at the time of the conveyance of Parcel A to Patricia Gardens, Inc. The site plan provided for parking on Parcels B and C and it might be concluded that the parties intended that Patricia Gardens, Inc. receive easements in Parcels B and C at that time. This argument is particularly strong in the case of Parcel C which not only provided parking but also access to much of the project and to its two internal parking lots.

issue here presented is whether there can be sufficient unity of ownership for purposes of implying an easement when the use arises after ownership of the relevant parcels has been split between various corporations all dominated by the same person or entity.

Apparently the only case that has passed upon the issue before us is Cosmopolitan National Bank v. Chicago Title & Trust Co., 7 Ill.2d 471, 131 N.E.2d 4 (1955). There a driveway was built between two buildings partly on the land belonging to each building's owner. At the time the driveway was built, the buildings were owned by two separate corporations in which the same two men owned all the stock. The Illinois Supreme Court held that each building's owner has a reciprocal easement in the driveway. The court said that at the time the use arose there was sufficient common ownership to indicate an ability to arrange and adapt the property in a manner sufficient to establish an easement.

No New York case has reached a result contrary to *Cosmopolitan National Bank*. Farley v. Howard, 60 App.Div. 193, 70 N.Y.S. 51 (1st Dept.1901), aff'd mem., 172 N.Y. 628, 65 N.E. 1116 (1902), which defendants rely upon, is not on point. Howard owned all of one lot and a one-half interest as tenant in common in an adjacent lot. He built a house upon the lot he owned whose porch encroached on the lot he owned in common. The two lots were later sold to third parties and the owner of the lot encroached upon brought suit. The court said that there could be no easement by implication in the encroached-upon lot because there was no unity of ownership at the time the use arose. As tenant in common Howard could not do as he pleased in subordinating the one lot to the lot he owned in full. See also Garvin v. State, 116 Misc. 408, 190 N.Y.S. 143 (Ct.Cl.

1921). The problem here is, of course, not one of only 50% ownership in one parcel, but O'Connell's apparently complete dominance of the corporations that owned the parcels of land here in question.

Nor is Times Square Properties, Inc. v. Alhabb Realty Corp., 117 N.Y.S.2d 901 (New York County Sup.Ct.1952), aff'd mem., 282 App.Div. 1024, 126 N.Y.S.2d 887 (1st Dept.1953) on point. In that case two parcels of land had once had a common owner. After ownership had been severed, a tenant of the two parcels, as permitted by his leases, erected a concrete platform that encroached on one parcel. Later, when the need for the platform had ended, a dispute arose between the owners of the parcels and the claim was made that there was an easement on the encroached-upon parcel. Although the matter was not relevant to its decision, the trial court noted that there had been no unity of ownership during the period of common ownership since the pieces of land had always been treated as separate properties. Although it was later cited by a District of Columbia case in dicta as passing upon the issue before us, Westminster Investing Corp. v. Kass, 266 F.Supp. 597, 599 (D. D.C.1967), it is clear that *Times Square Properties* did not.

In addition to noting that *Cosmopolitan National Bank* was not a New York decision, the district court distinguished it on the ground that here the FHA had required the separate incorporation of Patricia Gardens, Inc. of which it now complains. We find this distinction unpersuasive. While the FHA may have required that the housing project be separately incorporated, it did not require that the ownership of required parking spaces be in a different corporate entity from the housing project itself. At the most the FHA only acquiesced in this separate ownership.

See generally, e. g., Tarolli v. Westvale Genesee, Inc., 6 N.Y.2d 32, 187 N.Y.S.2d 762, 159 N.E.2d 558 (1959) ; Holloway v. Southmayd, 139 N.Y. 390, 34 N.E. 1047 (1893) ; Lord v. Atkins, 138 N.Y. 184, 33 N.E. 1035 (1893).

Since this case must be remanded, we need not determine now whether easements arose in Parcels B and C in 1960. The district court should consider this problem further on remand.

There is certainly no reason to conclude that the FHA is somehow estopped to argue that there was sufficient unity of ownership in Parcels A, B and C so that easements by implication were created in 1968. See Loftus v. Mason, 139 F.Supp. 207 (E.D.Va.1956), aff'd, 240 F.2d 428 (4th Cir.), cert. denied, 353 U.S. 949, 77 S.Ct. 860, 1 L.Ed.2d 858 (1957).

■ Following *Cosmopolitan National Bank* and extrapolating certain statements made in *Times Square Properties* and *Farley*, we conclude that the New York courts would say there is sufficient unity of interest among various pieces of land owned by different corporations if the corporations are owned and controlled by one or two shareholders in such a manner that they can do with all of the pieces of land as they please and if the pieces of land are not treated as being separately owned. Factors important in determining whether this test is met here would include whether Patricia Gardens, Inc., ever paid any rental to O'Connell or Jopat for its use of Parcels B and C; whether any payment went to Jopat when Parcel A was conveyed from it to Patricia Gardens, Inc.; and what role minority shareholders, if there were any, played in the management of Jopat and Patricia Gardens, Inc.

■ Since the district court did not make any findings of fact necessary to reach a conclusion on the point, the case must be remanded. As the record on many of these points is scant or non-existent, the district court may have to take additional evidence. Girard Trust Co. v. Windt, 178 F.2d 359 (2d Cir. 1949); C. Wright & A. Miller, Federal Practice and Procedure § 2577, at 699 (1971). The court should also consider the arguments that the government has raised for the first time upon appeal and upon which we do not pass. Of course, the United States has the burden of proving all facts necessary to support its claim of an implied easement. Tarolli v. Westvale Genesee, Inc., 6 N.Y.2d 32, 187 N.Y.S.2d 762, 159 N.E.2d 558 (1959).

## IV.

It must be recognized that the district court in part rested its decision upon the well-known reluctance of the New York courts to "pierce the corporate veil." See, *e. g.*, Walkovszky v. Carlton, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966); Bartle v. Home Owners Cooperative Inc., 309 N.Y. 103, 127 N.E.2d 832 (1955); International Aircraft Trading Co. v. Manufacturers Trust Co., 297 N.Y. 285, 79 N.E.2d 249 (1948); Berkey v. Third Avenue Ry. Co., 244 N.Y. 84, 155 N.E. 58 (1926). Those cases arose in the context of a plaintiff attempting to impose tort or contractural liability upon a shareholder for acts done by the corporation in its course of business. One purpose of incorporation is, of course, to limit shareholder liability. Our rule would impose liability upon Jopat and O'Connell only for what they have already done—letting their land be used by Patricia Gardens, Inc. without ever receiving any consideration. The separation of corporate and personal entities will be ignored only for the purpose of determining whether there is sufficient unity of ownership to allow implication of an easement.

Furthermore, the Court of Appeals in *Walkovszky* said that the shareholder will be held individually liable if he is "conducting the business in his individual capacity." 18 N.Y.2d at 419, 276 N.Y.S.2d at 589, 223 N.E.2d at 9. If O'Connell was shifting land between his two corporations without ever giving Jopat any consideration, he is, as far as the question here at issue is concerned, doing business in his individual capacity. Cf. African Metals Corp. v. Bullowa, 288 N.Y. 78, 41 N.E.2d 466 (1942). Moreover, implying an easement, if that is the case, will enforce the Peekskill zoning ordinance and thus achieve equity. *International Aircraft Trading Corp., supra,* 297 N.Y. at 292–293, 79 N.E.2d 249. We, therefore, conclude that nothing in New York's corporate law would prohibit the implication of an easement here if the conditions of our rule are met.

Vacated and remanded.