FEDERAL HOME LOAN MORTGAGE CORPORATION, Plaintiff,

v.

DUTCH LANE ASSOCIATES, Morton L. Ginsberg, d/b/a A & P Maintenance, Village of Spring Valley, and People of the State of New York, Defendants.

No. 90 Civ. 7623 (GLG).

United States District Court, S.D. New York.

Dec. 28, 1992.

Cooper, Liebowitz, Royster & Wright, Elmsford, NY (Thomas B. Decea, of counsel), for plaintiff.

Harvis Trien & Beck, New York City (Robert M. Trien, of counsel), for defendants.

## OPINION

GOETTEL, District Judge.

## I.  FACTUAL BACKGROUND

On October 16, 1991, this court granted summary judgment of foreclosure on a consolidated mortgage and note held by plaintiff the Federal Home Loan Mortgage Corporation ("FHLMC") after defendant Dutch Lane Associates ("Dutch Lane") defaulted on its monthly payments.[1] A judgment of foreclosure and sale was entered in July 1992 and a referee was appointed to conduct the sale. The Referee published a notice of sale once a week for four consecu-

tive weeks in the New York Law Journal pursuant to RPAPL § 231. Defendants claim that no notice of sale was served upon the attorneys for the moving defendants. As a result, the defendants were allegedly unaware of the sale scheduled for September 23, 1992 at which the property was sold at auction for over $1 million to plaintiff as the successful bidder.

Defendants allege that they learned of the sale when plaintiff's attorney served the Referee's Report of Sale upon them. After plaintiff allegedly refused to vacate the sale, defendants moved to have the sale set aside and also moved for Rule 11 sanctions arguing that plaintiff intentionally refrained from informing defendants of the sale. Conversely, plaintiff moves to confirm the sale.

## II.  DISCUSSION

Essentially, only one issue need be decided by this court, namely whether personal notice to defendants' attorney was required before a valid sale could be done? Resolution of this issue boils down to deciding whether plaintiffs need only have complied with the federal laws on service of notice of the sale of real property or whether plaintiffs were also required to comply with the relevant state procedures.

Defendants argue that New York law requires that pursuant to New York CPLR § 2103(b) defendants, as parties to the foreclosure proceedings who appeared and did not waive service of notice of sale, receive notice of sale in the same manner as all other legal papers have been served upon them. *See Aetna Life Ins. Co. v. Avalon Orchards, Inc.*, 103 A.D.2d 948, 479 N.Y.S.2d 564 (3rd Dep't 1984).[2]

---

1. We note that defendants Village of Spring Valley and the People of the State of New York filed an appearance in this action and waived their right to interpose an answer. Defendant Patrick McArdle d/b/a A & P Maintenance failed to answer or appear in this action. Accordingly, a default judgment was entered against these defendants in October 1991. At the same time, we granted defendant Morton L. Ginsberg's motion to dismiss. For purposes of this decision, we shall use the term "defendants" to refer only to the two defendants in this action who remain active in its litigation, Dutch Lane

Associates and MLG Properties, Inc., one of Dutch Lane's general partners.

2. Additionally, defendants move for Rule 11 sanctions based on Thomas Decea's signing of the motion to confirm the Referee's Report. They argue that Mr. Decea failed to serve the defendants' attorney notice of the sale knowing full well that New York law clearly required such notice. We shall not award Rule 11 sanctions for the simple reason that the issue of whether or not the Federal Home Loan Mortgage Corporation, as a federal entity in federal

In *Avalon Orchards,* 479 N.Y.S.2d 564, the court set aside a foreclosure sale holding that "[p]arties to a foreclosure proceeding who appear and do not waive service of notice of sale are entitled to receive such notice in the ordinary manner in which papers are to be served upon a party in a pending action ... Service by notice of sale on defendants' attorney was essential." *Id.* at 565 (citations omitted). Like the judgment in this case, stress defendants, the judgment of sale involved in the *Avalon Orchards* also did not specify any notice of sale for other parties to the action but the court nonetheless set aside the sale for failure to provide such notice.

In *Shaw v. Russell,* 60 N.Y.2d 922, 471 N.Y.S.2d 40, 459 N.E.2d 149 (1983), the New York Court of Appeals affirmed the Appellate Division's decision to vacate a foreclosure sale for improper notice. The court held without much discussion that:

> [a] party to a foreclosure proceeding who appears and waives service of the papers but who reserves right to receive notice of sale is entitled to such notice in the ordinary manner in which papers are to be served upon a party in a pending action. Notice by publication pursuant to RPAPL 231 is insufficient to comply with that requirement.

*Id.,* 471 N.Y.S.2d at 40, 459 N.E.2d at 149. This legal holding comports with the position legal commentators take on New York's notice requirements. *Bergman On New York Foreclosures* ¶ 30.06(1)(b) states in part that:

> If a defendant has effectively appeared, then delivering the notice of sale to him is a prerequisite to a valid sale. In such a case publication alone, which would otherwise suffice, will not be enough.

Defendants also argue that because they had no notice of the sale, they were deprived of their right to due process when property in which they had an interest was sold without their personal notice. *See Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (personal notice to mortgagee in an in rem tax foreclosure on property in which mortgagee had property interest was required by Fourteenth Amendment's due process clause).

Plaintiff contends that neither state procedural nor substantive law applies in this case. The crux of their argument is that the New York cases relied upon by defendants rest on the case of *Shaw v. Russell,* 60 N.Y.2d 922, 471 N.Y.S.2d 40, 459 N.E.2d 149 (1983), in which, plaintiff states, the court held that a party *"who reserves the right to receive notice of sale* is entitled to service of such notice in the ordinary manner in which papers are to be served upon a party in a pending action." (emphasis added). Plaintiff stresses that defendants made no such reservations.

By taking this language out of context, plaintiff seriously misrepresents the court's holding in *Shaw.* The Court of Appeals stated that an affirmative reservation of right to notice triggering the personal service requirement is required *when* an appearing party had previously waived service of papers. *Shaw* was recently cited approvingly by the Appellate Division in a case involving a partition action. The court held that parties to such an action "who appear and do not waive service of notice of sale are entitled to notice of sale in addition to the notice from publication required by RPAPL 231." *Lajos v. Erps,* 176 A.D.2d 703, 575 N.Y.S.2d 85, 86 (2nd Dep't 1991). Contrary to plaintiff's position, the court did not require that the party first reserve the right to notice of sale; it only required that the party appear and not waive service of the notice of sale.

▪ It is thus clear that absent this prior general waiver (or with a subsequent reservation of the notice of sale if a general waiver was made) New York law interprets personal service more like a presumptive requirement of sale. Following the course set by the courts in New York, we find that persons responsible for payment of a debt secured by a mortgage, here the mortga-

---

court, was required to also comply with state notice procedures was not a clear-cut issue. Plaintiff has made a reasoned argument as to

why only federal notice procedures should apply and we shall not sanction them for it.

gor Dutch Lane and MLG Properties, one of its general partners, must receive personal notice of the sale of the mortgaged property pursuant to CPLR § 2103(b). *See United States v. Whitney*, 602 F.Supp. 722, 726 (W.D.N.Y.1985). Publication alone will not suffice under New York law.

It is not disputed that defendants in the present action never waived service of the notice of sale. However, this case involves a default on a federally held or insured loan. The pertinent question becomes whether state notice requirements apply in federal court to the FHLMC's sale of a property pursuant to a default on a federally held or insured loan.

Plaintiff obviously argues the state law's inapplicability. To begin, plaintiff maintains that defendants had actual notice of the sale from a conversation on July 24, 1992 and their receipt of the judgment of foreclosure and sale which stated the property was to be sold after notice was published once a week for four continuous weeks. Plaintiff points out that defendants raised no objections until now.

Plaintiff further contends that defendants experienced no prejudice to warrant vacating the sale at this point. According to plaintiff, defendants could have filed in bankruptcy at any time over the past two years (and defendants' counsel raised this possibility with plaintiff) and also could have settled the case. What is more, says plaintiff, settlements broke down due to defendants' financial position which would preclude them from redeeming the property. Moreover, plaintiff argues that the Federal Rules of Civil Procedure apply since federal law is at issue (this not being a diversity case). Here, the government's foreclosure remedy under an insured mortgage is at stake, an issue of federal law says plaintiff.

■ Where dealing with default on a federally held or insured loan, federal law certainly governs the substantive rights, liabilities, and remedies of the parties. *See United States v. Victory Highway Village, Inc.*, 662 F.2d 488, 496 (8th Cir.1981) ("[F]ederal law, not [state] law, governs the rights and liabilities of the parties in

cases dealing with the remedies available upon default of a federally held or insured loan."). Plaintiff's citation to *Federal Home Loan Mortgage Corp. v. Canter*, No. 92–330 (D.C.N.J.1992) (unpublished), involving the appointment of a receiver, an issue of the FHLMC's substantive rights under the mortgage, is consistent with this idea. *See also United States v. View Crest Garden Apts., Inc.*, 268 F.2d 380 (9th Cir.1959) (finding federal law controlling for the appointment of a receiver in a foreclosure action).

■ Further, federal law governs questions involving the rights of the United States arising under nationwide federal programs. *See Whitehead v. Derwinski*, 904 F.2d 1362, 1365 (9th Cir.1990) (finding no conflict between state laws on foreclosures and deficiency judgments and those set out in the Veterans' Administration regulations); *see also United States v. O'Connell*, 496 F.2d 1329, 1332 (2d Cir. 1974) (applying New York law to determine what property was purchased during a Federal Housing Administration foreclosure proceeding).

We recognize that federal law establishes notice requirements for the sale of real property pursuant to a federal court order. Sections 2001(a) and 2002 of Title 28 govern post-judgment sales of any realty or interest in realty by order or decree of a United States court. Section 2001(a) provides that:

> [a] public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated.

In addition, 28 U.S.C. § 2002 states that:

> A public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the

sale in at least one newspaper regularly issued and of general circulation in the county, state, or wherein the realty is situated.

■ It is plain from the express language of these sections that notice by publication is the minimum requirement of notice when property is sold pursuant to federal court order. The decisive question is whether such publication is not only necessary but sufficient for the FHLMC to comply with. Answering this question turns on the degree to which this federal statute on notice preempts New York's CPLR § 2301 notice procedures for real property sales. The preemption effects of federal statutes can either be partial or complete depending upon the pervasiveness of the scheme of federal regulation of an area. *Fidelity Federal Sav. and Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *see also Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

In the area of mortgage foreclosures, courts have held that the federal law's displacement of state law is not complete. *See, e.g., Whitney*, 602 F.Supp. at 728 (holding that the Veterans' Administration regulations governing mortgage foreclosures do not totally displace New York law in that field).[3] In *O'Connell*, 496 F.2d 1329, the Second Circuit, while recognizing that it had previously held that federal law governed Federal Housing Administration foreclosure proceedings, applied New York law to determine precisely what property a buyer had actually purchased at the FHA foreclosure sale. *See id.* at 1332. The court relied upon the fact that there was no suggestion that state law was hostile to the federal scheme. *Id.*

■ "Where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law." *Fidelity Federal*, 458 U.S. at 153, 102 S.Ct. at 3022. The basic rule of thumb is clear: to the extent a state law actually conflicts with federal law, the state law must give way. Regarding the notice procedures required for the foreclosure sale of federally insured property pursuant to federal court order, we do not find that New York's notice provisions conflict with federal law. Sections 2001(a) and 2002 clearly establish a four-week publication period as a minimum for the sale of real property pursuant to federal court order. Nothing in their express language suggests that they were intended to establish notice-by-publication as the only notice required for real property sales. Indeed, the provisions only mandate that no public sale of real property pursuant to federal court order shall occur *without* notice-by-publication. Their language places no express limitations on the notice procedures states may supplement it with, so long as they are not inconsistent with §§ 2001(a) and 2002. We interpret them to mean that notice-by-publication is the minimum notice required to properly effectuate a sale of real property under a federal court's direction.

Requiring the FHLMC to also give defendants who have an undisputed interest in the property personal notice in no way undercuts this federally uniform notice threshold. There is no inherent incompatibility in complying with the notice-by-publication provisions of §§ 2001 and 2002 while also serving personal notice to parties with substantial interests in the property who have appeared pursuant to CPLR § 2301(b).

As such, the present situation is unlike cases such as *United States v. Merrick Sponsor Corp.*, 421 F.2d 1076 (2d Cir.1970), where a state statute of limitations for

---

**3.** As an aside, we also note that plaintiff relied upon New York law when it sought summary judgment on its foreclosure on defendants' property. Specifically, plaintiff argued that under New York law there is no obligation to accept a tender of defaulted installments for a properly accelerated mortgage. Plaintiff also argued that New York law governed the interpretation of the mortgage's assignment-of-rent provisions. Additionally, we note that the underlying mortgage and promissory note both state that they shall be governed by the law of the jurisdiction in which the property is located. *See* Trien Supplemental Affidavit, Exhibits A and B.

deficiency judgment motions was mutually inconsistent with Veterans' Administrations regulations. *Id.* at 1079 n. 1. The court in *Merrick* noted the "decisions applying 'federal law' to supersede state law typically relate to programs and actions which by their nature are and must be uniform in character throughout the Nation." *Id.* at 1078–79 (quoting *United States v. Yazell*, 382 U.S. 341, 354, 86 S.Ct. 500, 507, 15 L.Ed.2d 404 (1966)). Here, applying CPLR § 2301(b) works no mischief on the federal notice-by-publication scheme. Requiring personal notice for parties who have appeared and not waived notice only supplements, not supplants or obstructs, the federal notice provisions. The desirability of a uniform federal rule for the minimum notice required for property sales pursuant to court order is plain. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943). However, personal notice pursuant to CPLR § 2301(b) causes no interference with the integrity of the federal notice scheme.

Recognizing New York's personal notice requirement also comports with fundamental notions of due process by insuring that a person with an established property interest in a building receives notice of its sale. *See Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In *Mennonite*, the Supreme Court held that when a mortgagee was identified in a publicly recorded mortgage, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known address, or by personal service. *Id.* at 798, 103 S.Ct. at 2711. The Court stated that:

> Notice by mail or other means as certain to ensure actual notice is a minimum constitutional pre-condition to a proceeding which will adversely affect the liberty or property interest of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.

*Id.* at 800, 103 S.Ct. at 2712.

The present case may not be as compelling as the circumstances in *Mennonite* where the mortgagee clearly had no actual notice of the impending tax foreclosure sale. Plaintiff stresses that defendants were fully aware that a sale would occur after the four-week period after judgment of foreclosure had elapsed. Defendants did fully participate in the foreclosure proceedings before this court and were personally served with the judgment of foreclosure and sale which directed that the property be sold, and directed that notice of the sale be published once a week for four weeks. This should have doubtless provided defendants with general notice of the FHLMC's intention of selling the property as soon as the four-week period expired.

However, this says nothing about whether defendants, as parties who had appeared in this action, were entitled to specific notice of the date and place of sale and whether they had somehow acquired actual knowledge of them. Plaintiff describes defendants as having "full knowledge." Plaintiff's Reply Memorandum at 11. However, there is no evidence that defendants possessed actual knowledge of the crucial facts: the date and place of sale. To the contrary, in a letter dated October 20, 1992, defendants' counsel notified plaintiff's counsel after receiving the Referee's Report of Sale that they had been provided no notice of the sale nor had any knowledge that the sale had been scheduled or had occurred on September 23, 1992. *See* Kazarnovsky Affidavit, Exhibit 1. Defendants's full participation in the proceedings up to that point and their vigorous, though unsuccessful, opposition to foreclosure, which plaintiff's stresses, do not speak to their notice of the sale.

In his Reply Affidavit, plaintiff's counsel states that there can be no dispute "that Mr. Trien [defendants' counsel] had actual notice that the sale would occur shortly after four weeks beyond the date of judgment." Decea Reply Affidavit at 2. Knowledge of a sale "shortly after" the four weeks had concluded following the judgment of foreclosure does not mean that defendants had any notice of when the sale would actually occur. Plaintiff was free to set a date for the property's sale any time after those four weeks had ex-

pired. Nothing required plaintiff to set the sale on any particular date. Even if defendants had some general, ballpark idea of the sale's timing, this is not the functional equivalent of knowing specifically when and where the sale would be held. Yet, it is such key information that the notice provisions of New York law are designed to ensure is communicated to parties with substantial interests in the property for sale.

In many cases, defendants indicate no interest in the sale of the property. Where, as here, they have shown an intense interest, notice should be provided. This holding will not erase the benefits of a uniform federal law on notice requirements for real property sales. Sections 2001(a) and 2002 guarantee a minimum standard of uniformity for property sales carried out pursuant to the mandate of federal courts. As such, New York's requirement of personal service of notices of sale poses no discernable obstacle to accomplishing this federal objective. Nor does it grant defendants any additional substantive rights under New York law. Rather, New York's requirement that specific notice be sent enhances the federal goals of ensuring that parties with significant interests in a property are informed when that property will be sold. In this regard, CPLR § 2301(b) helps implement and fulfill the federal policy in ensuring that interested parties receive notice of the sale of property pursuant to a federal court decision.

Recognizing the applicability of state notice provisions which do not conflict with the federal notice-by-publication statutes also comports with past FHLMC practice. In two separate actions in New Jersey relating to other properties owned by the principals of defendant MLG, counsel for the FHLMC personally served all the defendants in that case with a specific notice of sale pursuant to state law. *See* Trien Reply Affidavit, Exhibits 3, 4 and 5. While this does not necessarily indicate the FHLMC's recognition that it is bound by state notice procedures, it is at least instructive on how the FHLMC conducts its business in some states.

Effecting personal service on defendants here would have been a simple process under the present circumstances. Plaintiff's counsel was well-acquainted with defendants, having dealt with them in this prolonged litigation. Plaintiff's counsel is no doubt fully familiar with the address of defendants' counsel who have represented defendants since August 1991. Given that he has presumably served every other paper on defendants' counsel, we can see no reason why plaintiff's counsel should have chosen not to serve defendants' counsel with a notice of sale, even if only as a matter of courtesy. Serving defendants' counsel with personal notice of the sale would have worked no hardship whatsoever. Any added burden would certainly have been *de minimis.*

Plaintiffs claim that defendants consciously failed to pursue the two options that existed to stop the sale, bankruptcy or settlement, and should thus be estopped from attacking the sale on notice grounds. Plaintiff recounts that certain attempts at settlement were made but defendants' attorney went on vacation without confirming that letters of inquiry were actually sent or received. We are unable to explain why defendants' counsel, after two years of dealing with Mr. Decea who has handled this case for plaintiff since its inception and works out of Elmsford, New York, sent a last-minute settlement communication to the FHLMC's office in Virginia. As a result, the September 8, 1992 letter was not received by plaintiff's counsel until September 30th, one week after the foreclosure sale had occurred. We shall not attempt to sort out this factual thicket. However, we note that the fact that defendants elected not to file in bankruptcy or failed to effect a settlement with the FHLMC before the sale does not mean that they have somehow waived their right to notice of the sale.

Plaintiff also argue that there is no evidence that defendants could have made a bid on the property with their own funds had they received personal notice. While we harbor serious doubts that defendants would have bid on the property given their precarious financial position (which was a prime cause of their inability to keep up

with the property's mortgage payments in the first place), we shall not attempt to sort out this disputed factual issue either. Nor do we give any credence to defendants' speculative claim that notice would have enabled them to encourage other prospective bidders to attend the sale. We presume that rounding up potential bidders is exactly what the month of published notices is intended to accomplish. Given our holding, we also make no attempt to delve into defendants' claim that they could have exercised a right of redemption.[4]

To conclude, we hold that New York's statutory provisions on notice of a sale are not inconsistent with the notice-by-publication requirement of §§ 2001 and 2002. Personal service should have been provided to defendants pursuant to CPLR § 2301(b) before the property was sold. Failure to provide such notice necessitates a new sale upon proper notice. Consequently, we vacate the sale and order plaintiff to effect proper service upon defendants before a second foreclosure sale.

SO ORDERED.

---

**4.** We note, however, that at least one judge in this district has held that no redemption rights exists in federal law. *See Thwaites Place Associ-* *ates v. Secr'y of U.S. Dep't of Housing and Development,* 638 F.Supp. 301 (S.D.N.Y.), *aff'd without opinion,* 833 F.2d 1003 (2d Cir.1986).