Irving Younger, J.
On November 18,1964, Eddie White (for convenience, called “White”) bought from Empire Mutual Insurance Company (for convenience, called “ Empire ”) a family combination automobile policy to cover his 1962 Oldsmobile. The policy ran to November 18, 1965. Nine days before its expiration, White’s car was demolished by fire. White claimed payment from Empire, and, on December 28, 1965 Empire delivered to White its check in the amount of $1,150, payable to the order jointly of White and of General Motors Acceptance Corporation (for convenience, called “GMAC”). White owed GMAC $1,300; the obligation was secured by a lien on the car. White asked Empire to issue a new check to his order alone. Empire did not. White thereupon commenced this action on the policy to recover $1,150 from Empire.
The evidence at trial stood as just summarized when White rested. Empire moved to dismiss the complaint on three grounds: (1) Empire’s, liability, if it has any at all, is to pay White and GMAC jointly, not White alone; (2) White had no insurable interest in the car; (3) Empire’s liability and White’s damages have not been proved.
We discuss these arguments seriatim.
To whom is payment due? Empire’s earlier check was payable to the order, jointly of White and of GMAC. Yet the evidence here contains not a word to suggest that GMAC is entitled to payment from Empire. The policy names only White as the insured, and it is therefore only to White, if to anyone, that payment is due.
Does White have an insurable interest? The policy states that the cost of the car was $1,400. GMAC had a lien on the car of $1,300. Whether White had an insurable interest turns upon section 148 of the Insurance Law: “No contract or policy of insurance on property made or issued in this state, or made or issued upon any property in this state, shall be enforceable except for the benefit of some person having an insurable interest in the property insured. The term ‘ insurable interest,’ as used in this section shall be deemed to include any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage.” White had an insurable interest, then, if he had a substantial economic interest in the car. That his equity was little or nothing is not conclusive. White owed GMAC $1,300, *529 and the car secured the obligation. If he failed to repay GMAC, it would repossess and sell the car, proceeding against White for any deficiency. If the car were destroyed by fire (as actually happened), GMAC would of course look solely to White for repayment of the entire $1,300. Does White then have a substantial economic interest in the safety of the car? The answer is too plain for explanation.
Has White adduced evidence to show Empire’s liability and the amount of his damages? The record contains only White’s undisputed testimony that Empire had responded to his claim of loss by delivering to him its check in the amount of $1,150. It is enough.
Any statement made, or act done by a party to an action which is or which amounts to a prior acknowledgment by him that some fact at issue is not as he now claims it to be is an admission. (See, generally, Morgan, “ Admissions as an Exception to the Hearsay Rule,” 30 Yale L. J. 355 [1921].) It is received to prove the truth of the matter asserted in it. (Koester v. Rochester Candy Works, 194 N. Y. 92.)
Empire’s position in this case, subsumed in its general denial of the allegations of the complaint, is that it is not liable at all or in any amount. However, Empire’s delivery of the check to White is either a statement by it that it was liable on White’s policy in the amount of $1,150, or is an act which amounts to such a statement. Either way, the delivery of the check is an acknowledgment by Empire of liability and of damages contrary to Empire’s position in this action. Hence the delivery of the check is an admission by Empire proving both liability and damages. (See City Transp. Co. of Dallas v. Vatsures, 278 S. W. 2d 373, 375 [Texas Civ. App., 1955].)
Empire argues that, even if delivery of the check to White should be deemed an admission, it cannot be received in evidence because it was done in connection with the settlement of White’s claim, and is theref ore privileged.
The law of New York recognizes a number of privileges — e.g., attorney-client, priest-penitent, physician-patient — the effect of each of which is to exclude a statement because of some extrinsic rule or policy favoring the confidentiality of the relationship in which the -statement was made. There is no privilege for statements made in the course of attempts to -settle. (See 4 Wigmore, Evidence [3d ed.] §§ 1061-1062.)
Properly understood, the “ privilege ” for such statements is nothing more than an application of the rules on admissions. If a party makes a statement that qualifies as an admission, it is received. On the other hand, if a party makes a statement
*530 that is not an acknowledgment that some fact is not as he now claims it to be, but rather is hypothetical, or conditional, or tentative in form, or acknowledges nothing but a desire for peace, or is made 1 ‘ for the sake of argument, ’ ’ or uttered “without prejudice,” it is not an admission and cannot be received. It follows that any statement by a party which is expressly made hypothetically, conditionally, tentatively, in the spirit of compromise, arguendo, or without prejudice, or which in its context appears to have been made with such a reservation, is not received in evidence because it does not qualify as an admission. Many statements made in the course of settlement are made with just such reservations, and hence are not admissions. But if a statement is not made with such reservations, and otherwise fulfills the definition of an admission, it is admissible without regard to the circumstance that it was made in the course of settlement. (West v. Smith, 101 U. S. 263, 273; Brice v. Bauer, 108 N. Y. 428, 433-434; Baron v. Kings-Suffolk Realty Corp., 4 Misc 2d 587, 590, affd. mem., 9 A D 2d 745; Factor v. Commissioner of Internal Revenue, 281 F. 2d 100, 125, cert. den. 364 U. S. 933.) So it is that a man who does not wish to be taken to admit anything will say nothing without adding some saving phrase. Compare Mr. Guppy’s proposal of marriage to Esther Summerson “without prejudice.” (Dickens, “ Bleak House ”, ch. 9.)
We hold that Empire’s delivery of its check to White was without reservation an admission of liability and of damages. Accordingly, on the entire case, plaintiff shall have judgment against defendant for $1,150, with interest from December 28, 1965.