Daniel E. Fitzpatrick, J.
Robert Frost considered “ good fences ” to be conducive to good neighborliness. He restricted it to the countryside, not making a universal maxim, thereby excluding urban and suburban living, thus displaying not only a deep knowledge of his fellowman but also the utmost good sense. For there is nothing more disturbing to a city dweller than having his neighbor erect a fence along the common lot line. *936 It is the equivalent to waving the proverbial flag* at a bull and goading the daemon of rage into a seething frenzy. The trauma at first sight of the divisive wall gives rise to shrieks of unspeakable anguish and inflicts .a psychic wound like that of a Spartan lance thrust firmly home in one’s vitals. Fortunately, the insult to the ego while sometimes critical is seldom fatal. Once the initial shock has abated, several alternatives present themselves to the offended neighbor: the use of explosives to blow up the obtrusive structure; this is abandoned as having hazardous as well as undesirable New Left implications; set fire to it; but there are the laws against arson; with wire cutter and Stilson wrench dismantle it; throw the pieces triumphantly onto the offending neighbor’s property. Poetic justice? Perhaps, but there are also laws against the malicious destruction of property to be considered. Such precipitate indulgence in self-help may also defeat any available legal or equitable remedy.
Calmer thoughts and the cooling winds of time convince that seeking out legal counsel is the best and wisest course. This brings on the petition in equity to remove the offending encumbrance by injunction, what common parlance with unerring accuracy calls “an action"to remove a spite fence”. It has always seemed to the court that the common tongue has a flair for intrinsic preciseness when it comes to inventing names for someone or something. One might call it an “ offensive fence ’ ’, or a “ revenge fence ”, or a “ nuisance fence ”! These somehow are all flat and anaemic. What a world of hate, malice and ill-will is contained in that one word “spite”. The last ounce of neighborliness has been squeezed out. The word has the ugly keen edge of the executioner’s axe and nothing else can fill its place, so a “ spite fence ” it is. This is why the mere sight of it causes such irrational fury. It is definitely not a ‘1 good fence ’ ’ in the poet’s meaning. Since we may not inquire into motives for the erection of the fence in this proceeding, we do not hold this to be a spite fence.
A brief resume of the facts is as follows:
The mother, Mary Cegelski, once owned all three lots. They are Lot 101, owned by the defendants Arpiño and acquired, by them from Barbara Modzel who had previously obtained a deed from Mary Cegelski. These premises are known as 60-34 56th Avenue.
The next lot is Lot 102 owned by the plaintiffs Kuczek and was acquired by them in June, 1957 from Henry and Mary *937 Cegelski, the son and daughter-in-law of the original owner. These premises are known as 60-36 56th Avenue.
The final lot is Lot 103, also owned by the defendants Arpiño and contiguous to plaintiffs’ property by a common wall, and was acquired by the defendants in July, 1953. These premises are known as 60-38 56th Avenue.
In 1969 the defendant erected the fence involved in this proceeding between Lots 101 and 102. That is between 60-34 and 60-36 56th Avenue.
Since the fence is not over 10 feet in height, there is no statutory violation here. (See Real Property Actions and Proceedings Law, § 843.) The matter must rest strictly on common law and the duty of equity to afford relief.
I. plaintiffs’ cause of action
(a) Easement by necessity
A reading of the record discloses plaintiffs have not established that they have obtained an easement by necessity. Plaintiffs tacitly admitted this failure of proof by asserting in their trial memorandum only one basis for injunctive relief, i.e., a prescriptive easement (to be discussed, infra).
The Second Department has held that an easement by necessity can only arise if the necessity was in existence at the time that the dominant estate was severed from the common ownership. (Robinson v. Byrne, 278 App. Div. 783.) Such is not the case in the matter at bar.
At the time of the conveyance in 1949 from Mary Cegelski, the common grantor, to Henry and Mary Cegelski, plaintiffs ’ predecessors in title, it was not necessary to use any part of defendants ’ premises to obtain access to the cellar. It appears that the cellar entrance in the front of the building may have been usable at that time. (The witness, Henry Cegelski, is inconsistent on this issue; he states at one point in his testimony that the front entrance was blocked while his father still owned the building and at another point he states that the entrance was blocked u about ’51”.) In any event, it was unnecessary for Henry Cegelski to use the side entrance since he could obtain access to the cellar from his mother’s building to the east.
Moreover, it appears that even today, after plaintiffs may have extended the side entrance, they can enter their cellar without intruding on defendants’ premises. Plaintiffs have already installed a cellar door which opens toward the building rather than outward and can probably reopen the front entrance, which was closed by Henry Cegelski’s father.
*938 (b) Easement by Prescription
The record is unclear as to when plaintiffs claim that the adverse use of defendants ’ property first began; irrespective of when such use was allegedly commenced, plaintiffs have failed to establish an easement by prescription. Plaintiffs cannot claim that they are entitled to a prescriptive easement by reason of the 10-year Statute of Limitations contained in CPLR 212 (subd. [a]), inasmuch as 10 years have not elapsed since the effective date of the CPLR, i.e., September 1,1963.
If, on the other hand, defendants’ cause of action to recover possession of their property from plaintiffs or their predecessors in title accrued prior to the effective date of the CPLR, the longer Statute of Limitations contained in the Civil Practice Act would govern this case. (CPLR 218, subd. [b]; Reiter v. Landon Homes, 31 A D 2d 538, mot. for lv. to app. den. 24 N Y 2d 738.) Section 34 of the Civil Practice Act provided a 15-year Statute of Limitations, and, hence, in order for plaintiffs to claim a prescriptive easement, there must have been an adverse use of defendants ’ premises prior to June 25, 1957, the date on which plaintiffs purchased their property.
Henry Cegelski has testified, however, that he only used the side cellar entrance “ once in awhile ” and that “ I didn’t use it much at all ”. Thus, no proof has been submitted of a continuous, uninterrupted open and notorious use of defendants’ premises prior to plaintiffs’ purchase of their property. (See Panzica v. Galasso, 285 App. Div. 859, affd. 309 N. Y. 978.)
Moreover, plaintiff Paul A. Kuczek testified that he built a curb adjacent to his side cellar entrance on the property of Mr. Modzel, defendants’ predecessor in title, pursuant to permission from the latter, and that Mr. Modzel never objected thereto. A use of land with the owner’s permission cannot ripen into, a prescriptive easement. (2 N. Y. Jur., Adverse Possession, § 12.)
(e) Conclusion
■ True, we do hold that this is not a “ spite fence ”. Some testimony, however, provides a not too subtle hint, as set forth in the following cross-examination of defendant Aniello Arpiño:
“ Q. Well, sir, let me ask you this: One of the things that you complained about, and one of the things that your attorney brought out, was the existence of a fence between the two houses —
“ A. Which two houses are you referring to?
1 ‘ Q. The one you live in and the one Kuczeks live in.
“A. Yes.
*939 “ Q. That had nothing to do with this property, did it!
‘ ‘ A. How would you like to live behind a wall eight years ! ’ ’
It may be in the nature of a “ retalitory fence We will never know, since the determination of the main issues makes it unnecessary to pass upon that question.
Defendants ’ motion to dismiss is, therefore, granted, by reason of plaintiffs ’ failure to make out a prima facie case.
II. defendants’ counterclaim
It appears from defendants ’ Exhibit D that plaintiffs acquired their property subject to an easement, in favor of their neighbors immediately to the west, to pass over the most westerly three feet of the property. It further appears, from plaintiffs’ Exhibits 1 and 4", that there is an obstruction or gate at the northerly end of the easement. Aside from these three exhibits, no proof has been submitted as to any interference with defendants ’ easement as alleged in the counterclaim, and that claim is dismissed for failure of proof.

 The descriptive adjective “ red ” is purposely omitted as the Best scientific evidence is that the animal is color-hlind.