McGraw-Edison Credit Corporation, Appellant, v Allstate Insurance Company, Respondent. (And Third- and Fourth-Party Actions.)

Second Department, June 26, 1978

**APPEARANCES OF COUNSEL**

*David Targ (Jacob W. Friedman* of counsel), for appellant.

*Curtis, Hart & Zaklukiewicz (Reid A. Curtis* of counsel; *Edward J. Hart* on the brief), for respondent.

**OPINION OF THE COURT**

TITONE, J.

■ The issue before this court is whether, under the circumstances of this case, the secured creditor may recover insurance proceeds directly from the insurer of the debtor's buyer, to the extent of its security interest. I believe it may not.

On December 1, 1969 the appellant, McGraw-Edison Credit Corporation (hereafter McGraw-Edison or the secured creditor), through its subdivision, American Laundry Machinery

Industries, sold certain dry-cleaning and laundry equipment to Route 110 Drive-In Cleaners, Inc. (the debtor), valued at $18,000. McGraw-Edison retained a security interest in the goods though a purchase-money security agreement. On December 15, 1969 the security agreement and the financing statement were duly filed with the Suffolk County Clerk and with the Secretary of State.

The security agreement contained the following pertinent provisions:

*"[The debtor] will keep Chattels insured* against loss by fire, theft, and such other risks as are customary, *in an amount not less than the amount owing hereunder* and in form, coverage and insurer satisfactory to Seller with loss payable to Seller or its assigns as their interests may appear and will furnish Seller or its assigns with evidence thereof.

*     *     *

*"This contract shall inure to the benefit of and be binding upon the* heirs, administrators, executors, legal representatives, *successors and assigns of both Seller and Buyer."* (Emphasis supplied.)

Although not specifically set forth in the record, it appears that the debtor never procured such insurance. Sometime after the two instruments were filed with the County Clerk, the debtor sold its business, together with the subject secured personal property, to the third-party defendant, RVV Drive-In Cleaners, Inc. (hereafter RVV Drive-In or the buyer). It may be inferred from the record that the sales agreement between the debtor and its buyer (likewise not set forth in the record), did not contain a provision requiring the buyer to provide insurance coverage for the benefit of either the debtor or the secured creditor.

RVV Drive-In procured fire insurance on the subject personalty from the respondent, Allstate Insurance Co. (Allstate). According to the uncontroverted statement contained in Allstate's brief on appeal, the proceeds of such insurance were made directly payable to the buyer.

On December 13, 1970 the subject personalty was destroyed by fire. Upon Allstate's refusal to honor the buyer's claim for fire loss, the latter commenced an action against it on the policy. Fifteen days after the fire, McGraw-Edison notified Allstate by registered mail of its filed lien and that there was an outstanding balance of $16,496 owed it on the equipment.

Allstate advised the secured creditor, McGraw-Edison, that it had rejected the buyer's demand for payment and that the buyer had responded by commencing an action against it on the policy.

After protracted litigation, the buyer and Allstate settled the action on the fire claim on September 23, 1974. Pursuant to stipulation, Allstate agreed to pay its insured $45,000 in satisfaction of all outstanding liens against the latter. In return Allstate was held harmless for any and all other claims. The secured creditor, its lien not satisfied from the settlement proceeds, brought the subject action against Allstate in Supreme Court, New York County. Special Term in that county, *inter alia,* granted Allstate's motion for a change of venue and transferred the action to Suffolk County.

After the transfer, McGraw-Edison (the secured creditor), on alleged newly discovered evidence, renewed a motion for summary judgment which it had previously brought in New York County. In its moving affidavit, McGraw-Edison contended that since its lien had been recorded long before the existence of any other possible creditor, its priority was established beyond a doubt. The Special Term in Suffolk County denied the motion on the ground that there was "no priority of contract" between the secured creditor, McGraw-Edison, and RVV Drive-In, the buyer of the chattels which were the subject of the security agreement and which had been destroyed by the fire. In addition, Special Term held that there was no authority in the Uniform Commercial Code which would permit a secured creditor to pursue the insurer of one who has purchased the debtor's secured collateral.

On this appeal, McGraw-Edison asserts that from an equitable standpoint it should recover from the insurance proceeds the amount still due on its security interest since the buyer's insurer had notice of its lien before the settlement proceeds were paid to the buyer. The insurer for the buyer responds that since there is no privity of contract between it and the secured creditor, the latter is not entitled to recover under the insurance policy.

The insurmountable problem faced by the secured creditor is its patent inability to establish either a common-law, contractual or statutory priority or legal relationship with the defendant insurer. Since there is no evidence of an agreement between the debtor and the buyer with respect to insurance coverage for the benefit of the secured creditor,

there can be no recovery by the secured creditor either under common-law or equitable principles. Contrary to McGraw-Edison's contention, the mere existence of a provision in the security agreement making the contract binding on assignees and transferees of the debtor, does not bind the insurer herein. One who has a lien only on the insured property has no claim to the insurance money realized by the insured in the event of a loss of the property, for a claim on the insurance money arises only out of the contract *(The Peoples State Bank of Ellinwood, Kansas v Marlette Coach Co.,* 336 F2d 3; *White v Empire Mut. Ins. Co.,* 59 Misc 2d 527; *City of Utica v Park-Mill Corp.,* 41 NYS2d 248; 46 CJS, Insurance, § 1150).

▋ Moreover, I also conclude that McGraw-Edison has no right to recover pursuant to any past or existing provision of the Uniform Commercial Code. At the time this action was instituted, subdivision (1) of section 9-306 of the Uniform Commercial Code defined "proceeds" as follows: "'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are 'cash proceeds'. All other proceeds are 'non-cash proceeds'."

According to the Official Comment to section 9-306 of the Uniform Commercial Code (McKinney's Cons Laws of NY, Book 62½, Part 3, p 484), the purpose of the statute, before it was amended in 1977 (L 1977, ch 866), was to "state a secured party's right to the [insurance] proceeds *received by a debtor* on disposition of collateral" (emphasis and bracketed matter supplied). (See *First Nat. Bank of Highland v Merchants Mut. Ins. Co.,* 89 Misc 2d 771, 773; *PPG Ind. v Hartford Fire Ins. Co.,* 531 F2d 58.) In other jurisdictions the courts have held, prior to the recent amendment of subdivision (1) of section 9-306, that money paid by an insurance carrier as reimbursement for a loss covered under a policy or contract of insurance is not "proceeds" as that term was then defined (see *Universal C.I.T. Credit Corp. v Prudential Inv. Corp.,* 101 RI 287; *Quigley v Caron,* 247 A2d 94 [Me]; 79 CJS Supp, Secured Transactions, § 82; 65 Michigan L Rev 1514).

Recently, subdivision (1) of section 9-306 was amended to reflect a 1972 proposed change which the Legislature at that time failed to enact into law. The new provision, effective July 2, 1978, provides: " 'Proceeds' includes whatever is received

upon the sale, exchange, collection or other disposition of collateral or proceeds. *Insurance payable* by reason of loss or damage to the collateral is proceeds, *except to the extent that it is payable to a person other than a party to the security agreement."* (Emphasis supplied.)

The Official Comment to the official text of the amendment when it was proposed in 1972 states that it is intended: "to overrule various cases to the effect that proceeds of insurance on collateral are not proceeds of the collateral. *The 'except' clause is intended to say that if the insurance contract specifies the person to whom the insurance is payable, the concept of 'proceeds' will not interfere with performance of the contract"* (Uniform Commercial Code, Amer Law Inst, 1972 Official Text, art 9, Secured Transactions, § 9-306, p 214 [emphasis supplied]).

As indicated earlier, prior to the enactment of the amendment, some courts in other jurisdictions had held that under subdivision (1) of section 9-306 the secured creditor had no right to insurance proceeds inuring to the *debtor on the collateral.* The thrust of the amendment, when read with the Official Comment quoted above, is to confer a clear statutory right in the secured creditor to share in any insurance proceeds *flowing to the debtor* vis-à-vis the collateral.

By then excepting insurance proceeds payable to the third party from being reached by the secured creditor, in the same paragraph, the Legislature conferred a right in the latter to insurance proceeds payable to the debtor and, in my opinion, codified what it believed was the law as between the secured creditor and the third party prior to the enactment of the amendment.

In my opinion, direct recovery from the buyer's insurer would impose upon the *insurer* the onerous burden of searching the record for the existence of liens on personalty even though the insurer has no privity of contract with the secured creditor and is probably unaware of the latter's existence. More importantly, as between the secured creditor and the buyer's insurer, the former is usually in the better position to police the enforcement of its agreement with the debtor with respect to insurance coverage on the collateral. In the instant situation, McGraw-Edison did not intervene in the buyer's suit against Allstate to assert its interest in the insurance proceeds. Instead, it waited approximately one year after settle-

ment of that action before proceeding against the buyer's insurer.

Accordingly, having searched the record in this motion for summary judgment, I conclude that not only should defendant Allstate prevail on the appeal, but also that summary judgment should be granted in its favor (see CPLR 3212, subd [b]). I am also of the opinion that the third- and fourth-party actions for indemnification must fall.

DAMIANI, J. P., SUOZZI and O'CONNOR, JJ., concur.

Order of the Supreme Court, Suffolk County, entered April 4, 1977, modified, on the law, by adding thereto provisions (1) granting summary judgment in favor of defendant and (2) dismissing the third- and fourth-party actions. As so modified, order affirmed, with $50 costs and disbursements payable to defendant by plaintiff.