OPINION OF THE COURT
John D. Bennett, J.
Petitioner, claiming to be a creditor of the estate in the sum of $6,370, sought to compel an accounting by the administratrix who filed an answer denying petitioner’s status as a creditor. Counsel subsequently stipulated that the proceeding be converted to one to determine the validity of a claim pursuant to SCPA 1809.
Because of the inadequate pleadings consisting of the one-page printed court form of petition for a compulsory accounting, respondent’s answer and petitioner’s bill of particulars, the testimony given at the hearings before the court without a jury tended to obscure the issues in dispute. To clarify the issues, in addition to the pleadings and the testimony, the court has taken judicial notice of all prior proceedings in this *848 estate (Matter of Surpless, 143 Misc 48; Matter of Magid v Gabel, 25 AD2d 649; Richardson, Evidence [10th Ed], § 217; and Fisch, NY Evidence [2d Ed], § 803).
Decedent, a retired New York City police captain, died intestate survived by three children: respondent daughter, another daughter and a son, having previously divorced his wife Jean on January 27, 1975. Contrary to respondent’s position at the hearing, decedent’s death by his own hand was admitted by respondent. Annexed to her petition for letters of administration is a certified copy of decedent’s death certificate from the City of Long Beach signed by a physician in the medical examiner’s office. The certificate recites that the immediate cause of death was "penetrating gunshot wound of head — sucidal [sic].” As a result of an autopsy the certificate states that the suicide took place between July 31, 1977 and August 3, 1977.
The Federal estate tax form 706 attached to respondent’s motion to fix the New York estate tax, in answer to the question "cause of death” states: "suicide.” Respondent’s answer to the question concerning decedent’s business or occupation on the return states: "newspaper stand and route.”
It was apparent to the court that although claimant failed to file a written claim with the administratrix as required by SCPA 1803 (subd 1) (see 2 Harris, Estates Practice Guide [3d ed], § 509), both respondent and her counsel were well aware of the exact nature of petitioner’s claim despite their denials at the hearing. Claimant’s bill of particulars alleges an oral agreement between claimant and decedent to sell decedent’s rights under a written license agreement with Ancorp. National Services, Inc., the licensor, of a newsstand at the Seaford station of the Long Island Railroad operated by the decedent for $1,000, title to pass on September 1; that decedent left a suicide note confirming the oral agreement and that petitioner now seeks specific performance of that agreement. Petitioner further alleges that subsequent to decedent’s death respondent recognized the oral agreement as a result of which petitioner operated the newsstand subsequent to the decedent’s death. Thereafter respondent repudiated the agreement and inartistically stated petitioner seeks an accounting, in reality a cause of action for breach of contract, for the receipts, disbursements and profits of the newsstand from October 1 "to date,” setting forth the following items of damages:
*849 Four months’ rent at $172.50 $ 690
Loss of profits for 4 months at $390 a month 1,560
Loss of salary, 16 weeks at $70 per week 1,120
Value of newsstand 3,000
Total $6,370
Respondent orally alleged the following defenses to petitioner’s claim: Inasmuch as the claim involved an assignment of an interest in real property, pursuant to the Statute of Frauds (General Obligations Law, § 5-703), it was void without a written memorandum, inadequate consideration and failure to identify the property involved in the sale.
Testifying on his own behalf claimant stated that he had been employed by decedent to operate the newsstand which was leased to decedent. Whether decedent had a license or lease is unclear since the agreement between Ancorp. National Service, Inc., and decedent was not put in evidence. Respondent objected to conversations between claimant and herself subsequent to death which tended to show that respondent recognized petitioner’s claim on the ground that such conversations were an attempt to compromise a dispute. To support petitioner’s claim of an oral agreement testimony was adduced by three disinterested independent witnesses. Two of the witnesses were prospective purchasers of decedent’s home delivery newspaper route. They stated unequivocally that their negotiations for the purchase of the home delivery route did not include the sale of the newsstand. Both witnesses testified that decedent told them that he had agreed to sell the newsstand to claimant for $1,000. The third witness, a former employee of decedent, substantiated the testimony of the two other witnesses as to decedent’s agreement to sell the newsstand to claimant.
It is the court’s opinion that conversations between claimant and respondent subsequent to decedent’s death did not involve the compromise of a dispute but a recognition of claimant’s rights under the oral agreement with decedent. Respondent did not deny that she received the proceeds from the newsstand’s operations during the period that it was operated by the claimant. Respondent submitted no evidence to controvert petitioner’s claim for the period subsequent to the decedent’s death even though she was present at all times during the hearings.
*850 To support respondent’s claim of a written memorandum of the oral agreement he introduced in evidence (Exhibit No. 2) a five-page document signed by claimant, respondent, their respective attorneys, a third person and his attorney entitled "Submission of Controversy under Rule 3222 of the Civil Practice Law and Rules.” Paragraph 1 of Exhibit No. 2 recites that there was an oral agreement between claimant and decedent whereby the latter agreed to sell his rights under a license agreement with Ancorp. National Services, Inc., to claimant for $1,000 with transfer to take effect September 1, 1977. Paragraph 2 states that decedent died on August 3, 1977 by his own hand, leaving a suicide note in which he expressed his intention to transfer the newsstand to claimant for $1,000 in accordance with the oral agreement. A photocopy of the note found alongside the decedent is annexed as Exhibit A.
In paragraph 3 both parties concede that without the suicide note the oral agreement would be unenforceable against the estate because of the Statute of Frauds and that claimant was an incompetent witness to testify on his own behalf under CPLR 4519.
In paragraph 4 the parties request the court to determine whether (a) the suicide note (Exhibit A) is a written memorandum of the oral agreement rendering the agreement enforceable, or (b) whether Exhibit A is a testamentary disposition, or (c) whether Exhibit A is a gift causa mortis, and lastly, whether respondent is obligated to transfer decedent’s rights in the newsstand to claimant upon payment of $1,000. The statement is dated November 10, 1977.
The court finds that Exhibit No. 2 is not an offer to compromise a dispute but a method for settling the dispute of the parties by submitting an agreed upon statement of facts to the court. As such it is an admission of facts binding upon both parties (Cook v Barr, 44 NY 156; Whitney v Town of Ticonderoga, 127 NY 40; 1 Mottla, NY Evidence, Proof of Cases [2d ed], § 57). In effect, Exhibit No. 2 is a pleading, though never filed, binding upon the parties in this proceeding (Stemmler v Mayor of N. Y., 179 NY 473).
The rationale for refusing to admit into evidence compromise offers is a salutary one. Courts look with favor upon settlement of disputes by litigants and encourage their use. A compromise offer is inadmissible against the offeror (Fisch, NY Evidence [2d ed], § 796). Though a compromise offer is inadmissible in evidence, a statement of an independent fact *851 contained in the offer is admissible (Baron v Kings-Suffolk Realty Corp., 4 Misc 2d 587, 590, affd 9 AD2d 745; White v Empire Mut. Ins. Co., 59 Misc 2d 527, 530; Armour v Gaffey, 30 App Div 121, affd 165 NY 630).
The provision of the suicide note, which is signed "Al” at the end, relied upon by claimant is as follows: "Relative to newsstand R. Shaeffer Jr. CA13517 was to buy same for $1,000 it is steal at price but he is great boy and deserves it carry this out. He also has last weeks receipts about $600 which you will have difficulty getting. Wish him my best and thank him for all he has done for me. He would make any man proud to have as a son.” (Emphasis supplied.)
Decedent recognized that the price agreed upon was a bargain. Respondent cannot claim an inadequate consideration as a defense to the enforcement of the agreement. It has been repeatedly held that if two competent parties agree to a price, barring overreaching, it is not for the court to say that it is inadequate (Mandel v Liebman, 303 NY 88). None of claimant’s witnesses testified as to any date of closing. The quoted portion of the suicide note is a sufficient memorandum of the oral agreement between claimant and decedent. It identifies the parties, the business to be sold, the price and is signed by the party to be charged. It is unnecessary that the parties agree to the closing date, allocation of the price between the assignment of the lease and the personal property involved such as cigarettes, candy and gum, since the proof adduced does not indicate that the parties orally agreed to the sale of these items of merchandise. No proof was submitted showing that the parties agreed upon a closing date. Accordingly, the law implies a closing within a reasonable time from the date of the agreement (Tobias v Lynch, 192 App Div 54). The court finds a reasonable closing date to be September 1, 1977 as the first day of the month subsequent to the issuance of letters of administration to the respondent. All of the respondent’s objections to the admission into evidence of the suicide note (petitioner’s Exhibit No. 3) are overruled. It was unnecessary for claimant to prove the decedent’s handwriting. The respondent in paragraph 2 of Exhibit No. 2 admitted the genuineness of the suicide note (Exhibit No. 3). Lastly, the detective from the City of Long Beach testified that Exhibit No. 3 was found by him in the decedent’s apartment alongside his body. This fact together with the death certificate annexed to the petition for letters of administration lends *852 great weight to the fact that Exhibit No. 3 is the suicide note of decedent.
 Petitioner’s Exhibit No. 4, the report of the Police Department, County of Nassau Scientific Investigation Bureau, is admissible in evidence as a record made in the normal course of business in accordance with CPLR 4518 (subd [a]). However, that portion of the report containing the detective’s opinion must be stricken since the detective was unavailable for cross-examination by respondent (Neill v Jodum Cab Corp., 38 AD2d 562; Hessek v Roman Catholic Church of Our Lady of Lourdes in Queens Vil, 80 Misc 2d 410). There the court held that a deceased physician’s medical records were inadmissible in evidence since they contained the expert opinion of the physician who was unavailable for cross-examination. The court points out to the Bar that the determination of disputes involving contracts made by decedents is within the jurisdiction of the Surrogate’s Court. This includes the determination of rights under stockholders and other agreements (see Matter of Geller, Surrogate’s Ct, Nassau County, Oct. 3, 1978, and cases cited therein). The Bar generally is unaware of the procedure available to have the Surrogate’s Court determine claims such as the instant case and other contract actions. SCPA 1808 and 1810 are available as well as SCPA 2105 (Puro v Puro, 75 Misc 2d 950, 952, mod 40 AD2d 784, revd 33 NY2d 802). Perhaps the Legislature should clarify the procedure for claimants to enforce contract obligations of decedents by enacting legislation similar to that authorizing the court to enforce contracts to purchase and sell real property to which the decedent is a party (SCPA 1921).
Insofar as claimant is concerned, Exhibit No. 3 is neither testamentary in nature nor a gift causa mortis but a memorandum of an oral agreement making such agreement enforceable by the court. Respondent is therefore directed to transfer decedent’s interest in the newsstand upon payment by claimant to respondent administratrix of the sum of $1,000.
Lastly, since no evidence was adduced at the hearing concerning claimant’s request for an accounting of the proceeds of the newsstand operated by him from September 1, 1977 to January 30, 1978, the court suggests that counsel and the parties confer with a member of the law department on November 15, 1978 at 9:30 a.m. to discuss this matter. If no agreement can be reached at the conference the court will set *853 the matter down for a hearing on five days’ notice with three additional days if notice is served by mail.