OPINION OF THE COURT
Harold Hyman, J.
The first principle of equity is justice (Tampers v Bank of America, 217 App Div 691); and, a court of equity should require that parties before it do what equity and good conscience require should be done, particularly where public health and safety are concerned (Henderson u Leather-man, 120 Fla 496).
Plaintiffs in this nonjury action seek the declaration of an easement across defendant adjoining landowner’s property, part of which is a driveway. Such an easement, plaintiffs claim, is to provide a means of safe egress from fire exit doors, previously constructed and in place prior to defendant’s purchase of his present premises, and openly obvious and known to defendant at the time of said purchase; the fire exit doors are situated on the southwesterly *9 wall of the plaintiffs’ one-story commercial building which borders defendant’s property. Plaintiffs claim that it is necessary to traverse defendant’s property when exiting from plaintiffs’ fire exit doors in order to reach safely and quickly the public thoroughfare, 23rd Avenue, and that such is the only practical, efficient, quick and safe route to safety.
Plaintiffs also request a permanent injunction restraining the defendant from erecting on his property any barricades obstructing plaintiffs’ free use of the fire exit doors and windows on the southwesterly wall of the building. Plaintiffs’ final cause of action sounds in trespass.
Before confronting the issue of whether an easement exists, whether it be one created by prescription, implication, way of necessity (all pleaded by plaintiffs), or by express grant (as later argued by the plaintiffs), it is necessary to detail the devolutionary history of the two parcels involved.*
The plaintiffs’ property (Parcel I) and the defendant’s property (Parcel II) were in “unitary ownership” from 1896 until 1934 when the fee owner, Astoria Silk Works, conveyed Parcel II to one Isaac Mishler. After several more transfers of Parcel II, Abner Davis took title thereto in 1966; the defendant (Dimacopoulos) took title from Davis’ executors in 1976.
Parcel I was first conveyed by Astoria Silk Works in 1940, but Willow Tex did not obtain fee simple title until 1980. A significant link in the chain of possession of Parcel I is that Sida Realty Corp. had possession as net lessee of Parcel I during a period of time encompassing the period during which Abner Davis had fee simple title to Parcel II, and, this is legally most significant because Abner Davis, besides being the owner of Parcel II, was at the very same time the principal owner and vice-president of Sida Realty Corp. in full control of said company’s actions and activities, so that actions taken by him during such period *10 definitively and unequivocally affected the use and occupation of both parcels.
It should be noted that “unity of possession” is not necessarily synonymous with “unity of ownership” (17 NY Jur, Easements and Licenses, § 65, p 331; Farley v Howard, 60 App Div 193, affd 172 NY 628). Although Sida had possession of Parcel I as net lessee at the same time Davis, Sida’s vice-president, owned Parcel II, there was no legal unity of ownership at that time inasmuch as absolute ownership, and not mere possession of both parcels by one party is required (17 NY Jur, Easements and Licenses, § 65, p 331). Where, for example, one party is the absolute owner of one parcel and a tenant in common with a one-half interest in the other parcel, the two parcels cannot be said to exist in “unitary ownership” (Farley v Howard, supra). Thus, the only period of unitary ownership of the two parcels in question is that from 1896 to 1934.
Plaintiffs (Willow Tex, Inc. and Macaluso), had no occasion to use the previously required and installed fire doors. It was not until their present tenant moved in and decided to unboard the windows on the southwesterly wall that the fire doors were initially opened. (The windows had been boarded up only for security purposes during nonusage of the building.)
Defendant Dimacopoulos, having observed that the plaintiffs’ tenant used the fire doors to gain access to the alleyway, part of defendant’s property, in order to unboard the windows, subsequently, and without request or permission of plaintiffs or plaintiffs’ tenant, took it upon himself to reboard the windows and, further, to barricade the fire doors by constructing wooden fences four inches from the doors. Defendant Dimacopoulos, via his daughter, verbalized to plaintiffs’ tenant his demand that the fire doors should never be used, declaring dictatorially that the plaintiffs and their tenants “are not allowed to open the windows one inch or walk out of those doors in the event of a fire.” Plaintiffs, after receiving a summons from the fire department because of the defendant’s deliberate obstruction of the fire doors, brought the present action for injunctive;, legal and equitable relief.
*11 PRESCRIPTIVE EASEMENT
To establish a prescriptive easement one must show an adverse, hostile, continuous and uninterrupted use of the easement for the statutory period (10 years) (RPAPL 501; 2 NY Jur, Adverse Possession, § 117; Long Is. Beach Buggy Assn. v Town of Islip, 58 Misc 2d 295, affd 35 AD2d 739). The first two requirements above are not met. Defendant, Dimacopoulos, has only been in title since 1976, and his predecessor in title, Abner Davis, “allowed” the use of the “right of way.” The use was permissive during the time of Davis’ ownership of Parcel II, not adverse or hostile. Therefore, plaintiffs’ contention that a prescriptive easement was created over the defendant’s property cannot succeed, the facts indicating otherwise.
IMPLIED EASEMENT
Plaintiffs also contend by their pleadings that an easement was created by “implied grant.” The elements required to adjudge an implied easement are often quoted from Jacobson v Luzon Lbr. Co. (192 Misc 183, 185-186, affd 276 App Div 787, affd 300 NY 697):
“1. The estates presently resting in the hands of different owners must formerly have been in unitary ownership; 2. While so formerly held in one estate, a use must have been created by the owner either in which one part of the land was subordinated * * * to another; or such a use was made of the two parts as to create a reciprocal subordination; 3. The use made must be plainly and physically apparent on reasonable inspection; 4. It must affect the value of the estate benefited and must be necessary to the reasonable use of such estate.”
The last clause of the fourth element — referring to “necessity” — has been strictly construed and is usually the most difficult to prove (Heyman v Biggs, 223 NY 118). Its weight as a requirement for implied easements is therefore disproportionately great; hence, implied easements have been termed “easements of necessity” (e.g., Nash v Moller, 141 NYS2d 43; Kuczek v Arpino, 65 Misc 2d 935). But the evidentiary problem in the present case does not concern “necessity” for there was ample evidence adduced at trial, including expert testimony, proving that the *12 location of the fire doors in the southwesterly wall of Parcel I was necessary to provide safe egress in case of a fire; it was an official requirement, a “directive.” Further sufficiently proven were the facts that any other location, either in a different wall, or in the adjoining four-story building, would have been unsafe, providing for a too circuitous, nonexpeditious, or otherwise insufficient escape route.
Rather, the evidentiary problem in the present case concerns the second of the above-quoted elements required for an implied easement. The only evidence produced at trial concerning the creation of a use subordinating Parcel II to the benefit of Parcel I related to the time period during which Abner Davis owned Parcel II and his company was lessee of Parcel I. During that time, an application and plans were filed with the Building Department of the City of New York by Sida Realty for the purpose of obtaining a certificate of occupancy for Parcel I. Because the building department required further information concerning the fire door exits in question, an amended application and plans were filed by Sida Realty, in conjunction with Abner Davis, which encompassed the structures of and on both parcels and clearly indicated the position of the fire doors in Parcel I. Abner Davis, having freely participated in the filing of the amended application and plans, thereby revealed his intention to provide accessibility to safety by easement extending across and over Parcel II, his wholly owned parcel, and to the detriment of his own property. Yet this creation of a subordinating use is irrelevant to the issue of implied easement because it occurred after the severance of legal unitary title, although within the practical unitary use and occupancy of both parcels. It was necessary for the plaintiffs to prove that the use existed prior to 1934. The only proof on this matter — from which the plaintiff requests the court to find a preseverance use — was a reference on the amended application to a structure labeled “frame-dye house” which existed during the time of legal unitary title. While the court may find that there was a structure on Parcel I prior to 1934, this evidence is insufficient to prove the existence of fire doors, or any doors, which could have necessitated the creation of an easement by implication.
*13 WAY OF NECESSITY
The plaintiffs amended their pleadings at the conclusion of the trial, to include a cause of action for “easement by necessity,” construed by the court to mean “a right of way of necessity.” The distinction between an “easement by implication” and one by “right of way of necessity” has often been obfuscated (17 NY Jur, Easements and Licenses, § 87, p 355). An implied easement, although grounded on necessity, is distinct from “a right of way of necessity”. The distinction is set out below.
“Ways of necessity” differ from “implied easements” in that “a way of necessity” does not rest on an apparent, continuous, pre-existing use as does “an implied easement.” Rather, a “way of necessity” arises suddenly where there is a conveyance of a tract of land formerly in unitary title with the land from which it was severed, and where the part conveyed or the part retained is entirely surrounded by the land from which it is severed or by this land and the land of strangers. Thus, an immediate need arises for a “way” to traverse the encircling parcels (17 NY Jur, Easements and Licenses, § 87, p 355). It is a firm requirement that the necessity must exist as of the time of severance of unitary title (Kuczek v Arpino, 65 Misc 2d 935, supra). Although a plaintiff need not show a pre-existing subordination to prove “a way of necessity”, there nevertheless must be shown a severance of unitary title which gives rise to an immediate necessity which may lie dormant but must, at the very least, exist contemporaneously with the severance (Ann., 94 ALR3d 502; 25 Am Jur 2d, Easements, § 35, p 448). The New York rule on this issue is stated in Kuczek v Arpinmo (supra, p 937): “an easement by necessity can only arise if the necessity was in existence at the time [of severance]”. As above with respect to implied easement, the evidence concerning the nature of the two parcels as of the date of severance is insufficient for the court to find that a necessity then arose.
EXPRESS GRANT
Easements, of course, can also be created by express grant. What is needed for an express grant is a writing clearly evincing such intent provided the writing complies *14 with the Statute of Frauds (General Obligations Law, § 5-703, subd 1; 28 CJS, Easements, § 24, p 676). No particular words are necessary to constitute a grant; in fact, the use of the word “grant” is not even essential to the creation of such an easement (Rubel Bros. v Dumont Coal & Ice Co., 111 Misc 658, revd on other grounds 200 App Div 135). Although no express grant of an easement was pleaded by the plaintiffs, this court has the discretionary authority to amend the pleadings, sua sponte, even after trial if he can do so without surprise or prejudice to the defendant (CPLR 3025, subd [c]; Family Fin. Corp. v Secchio, 65 Misc 2d 344; see Diemer v Diemer, 8 NY2d 206; Lancaster Silo & Block Co. v Northern Propane Gas Co., 75 AD2d 55). By allowing a cause of action for express grant, the court is acting in conformity with equitable principles and with CPLR 3026 since equity does not look to technical niceties of procedure, but is concerned with ultimate consequences (Detroit Steel Prods. Co. v Hudes, 17 Ill App 2d 514), and since proof was adduced during trial which met the elements of such cause of action and the other party has had a fair opportunity to contest same.
The subject pleadings, given the liberal construction provided for by CPLR 3026 and equitable principles, contain within their parameters the claim of an express grant (see Goldberg v Rand, 37 Misc 2d 87). Moreover, to avoid any possible claim of prejudice to the defendant, the court will address itself to the defenses of the Statute of Frauds, and lack of notice under section 243 of the Real Property Law, which were not raised by the defendant during the course of the trial, but could possibly have been asserted against an express grant.
Since, in this case, the grant of an easement over the defendant’s property would generally fall within the Statute of Frauds (General Obligations Law, § 5-703, subd 1), a writing is required; but this writing does not have to take any particular form (Franklin Research & Dev. Corp. v Swift Elec. Supply Co., 236 F Supp 992, affd 340 F2d 439). The general rule is that, the writing (1) must identify the land that is the subject of the easement, and (2) express the intention of the parties (17 NY Jur, Easements and Licenses, § 29, p 275). When Dimacopoulos’ predecessor in *15 title, Abner Davis, participated in the submission to and filing of plans with the Department of Housing and Buildings of the City of New York, such plans clearly demarcating the location of the fire doors with both symbols and words, he clearly and definitively revealed his unequivocal intention to grant thereby an easement across his property. The fact that these plans take a somewhat unorthodox form for the granting of an easement does not automatically render them invalid for the purpose of granting an easement (see Franklin Research & Dev. Corp. v Swift Elec. Supply Co., supra). Indeed, the myriad of documents that have been used by the courts to overcome the Statute of Frauds indicates that form is less important than the unambiguous intent which can be gleaned from the document (Crabtree v Arden Sales Corp., 305 NY 48 [payroll cards]; Bach Realty Corp. v Whiten Realty Corp., 228 App Div 361 [memorandum on the back of a check]; Matter of Doran, 96 Misc 2d 846 [suicide note]; see Bochino v Palmer, 203 NYS2d 301 [minutes of proceedings before a government body of a municipal corporation]).
The defendant contends that subsequent plans submitted to the building department extinguished any easement previously granted because they indicate an alternate location for the fire doors. This argument is factually and legally without merit. In order to extinguish a granted easement there must be an act by the owner of the dominant estate or a failure to act when such dominant estate is threatened which invokes the estoppel doctrine (Andrews v Cohen, 221 NY 148). These “subsequent plans” were prepared by an architect retained by defendant Dimacopoulos, but they were never ever followed through. To the contrary, they were allowed to expire. The subsequent equivocal actions of defendant, one who is not acting on behalf of the owner of the dominant estate, will not serve to extinguish easement rights of Parcel I already then existent.
In fairness to the defendant, the court will also address itself to a possible defense to the existence of an express grant found in section 243 of the Real Property Law: “A grant in fee or of a freehold estate, must be subscribed * * * If not duly acknowledged before its delivery * * * its execution and delivery must be attested by at least one witness, *16 or, if not so attested, it does not take effect as against a subsequent purchaser”.
The court finds that the defendant, Dimacopoulos, had actual knowledge of the existence of a right of way across Parcel II prior to his taking title thereto. Dimacopoulos, himself, admitted at trial that he personally made a thorough examination of the property, land and buildings prior to the purchase thereof. That the fire doors were there to be seen leading out to the property he was purchasing was obvious; he could not help but see and know of their existence, purpose and intended use. Because of the defendant’s actual knowledge the court will equitably estop the defendant from denying the existence of the easement. Equity will prevent a party having knowledge of just rights of another from defeating such rights (Lister v Vogel, 110 NJ Eq 35). This is in accordance with the weight of authority in this State. An easement by grant which is unacknowledged and unattested may establish easement rights in equity enforceable against subsequent purchasers with knowledge of facts suggesting that their estate is subservient to another (Historic Estates v United Paper Bd. Co., 260 App Div 344, affd 285 NY 658; Lubelle v Rochester Gas & Elec. Corp., 21 AD2d 369; Malerba v Warren, 108 Misc 2d 785; Sanzone v Niagara Mohawk Power Corp., 47 Misc 2d 237).
In conclusion, judgment is granted to plaintiffs to whom an easement by grant is declared to exist, extending from the two fire doors on the southwesterly wall of plaintiffs’ one-story building, across the defendant’s premises, to the public thoroughfare, 23rd Avenue. Such easement granted is to be broad enough to allow three persons, standing abreast, to traverse the rear and side of defendant’s premises. Such easement is to be limited to use for emergency egress only in accordance with the general rule that easements are limited to the use for which they were created (28 CJS, Easements, § 87, p 765; Ferguson v Producers Gas Co., 286 App Div 521). The defendant, his agents, employees and all persons acting in concert with him or on his behalf, are henceforth permanently enjoined from erecting or causing to be erected any barriers which would obstruct or prevent free and unrestricted egress through the two *17 fire doors in the southwesterly wall of the one-story building to defendant’s property-driveway for free and untrammeled access to 23rd Avenue; and from boarding up and/or barricading the fire doors or windows located in the southwesterly wall of the plaintiffs’ one-story building; from preventing the free and unrestrained use of said doors and windows for the purposes of egress and for access of light and air; and, from in any manner preventing the plaintiffs, their agents, tenants, employees, successors, and/or assigns from using said doors and windows of plaintiffs’ property for the purposes of egress and light and air. The two fences presently in existence on the defendant’s driveway need not be removed, but, however, they are to remain unlocked from the hours of 7:00 a.m. to 9:00 p.m. so as to permit free and ready egress to plaintiffs, their agents, tenants, employees, successors and assignees to the public thoroughfare — 23rd Avenue.
The action in trespass is dismissed, plaintiffs having not adduced sufficient proof of the requisite elements thereof.
Plaintiffs shall have taxable costs and disbursements.

 Plaintiff, Willow Tex, is fee simple owner of two buildings at 38-01 23rd Avenue, Astoria, a one-story building which contains the fire doors in question, and a four-story building. Plaintiff Macaluso is secretary-treasurer of Willow Tex. Defendant Dimacopoulos is the owner of property and buildings located at 27-76 Steinway Street, Astoria, which property abuts the plaintiffs’ one-story building and property. Defendant Dimack is a defunct corporation no longer considered a party to the suit.