■ ROSARIO-PAOLO, INC., Appellant, v C & M PIZZA RESTAURANT, INC., Defendant, and INVESTORS INSURANCE COMPANY OF AMERICA, INC., Respondent. [599 NYS2d 628] —In an action to recover the proceeds of a fire insurance policy, the plaintiff appeals from so much of an order of the Supreme Court, Westchester Court (Delaney, J.), dated January 30, 1991, as denied that branch of its motion which was for summary judgment against the defendant Investors Insurance Company of America, Inc., and granted that defendant's cross motion

for summary judgment dismissing the complaint insofar as it is asserted against it.

Ordered that the order is affirmed insofar as appealed from, with costs.

On or about March 6, 1987, the plaintiff, Rosario-Paolo, Inc., sold its pizza restaurant business to the defendant C&M Pizza Restaurant, Inc. (hereinafter C&M Pizza). In order to secure the payment of the unpaid balance of the purchase price, the plaintiff and C&M Pizza entered into a security agreement which provided that C&M Pizza would keep the premises insured against fire and provide a copy of the insurance policy, listing the plaintiff as a beneficiary, to the plaintiff.

C&M Pizza procured a fire insurance policy from the defendant The Investors Insurance Company of America (hereinafter the carrier) which covered the premises from March 9, 1987, through March 9, 1988. However, the policy failed to name the plaintiff as a loss beneficiary. The only beneficiary named on the policy was C&M Pizza.

On January 19, 1988, the business premises was totally destroyed by a fire. Thereafter, by certified letter dated April 13, 1988, the plaintiff notified the carrier of its claim to the proceeds of the fire insurance policy. However, on or about May 18, 1988, the carrier sent C&M Pizza a check for $49,598.52. The plaintiff was not named as a payee on the check. The check was endorsed by the owner of C&M Pizza, and deposited into an individual account.

As a result, the plaintiff commenced this action against C&M Pizza and the carrier to recover the proceeds of the fire insurance policy. The plaintiff claimed, *inter alia,* that the carrier acted negligently when it issued the check to C&M Pizza, despite the fact that the plaintiff had previously notified the carrier of its claim to the proceeds of the fire insurance policy.

Thereafter, the plaintiff moved for summary judgment on its complaint. The carrier cross-moved for summary judgment against the plaintiff and C&M Pizza. The Supreme Court denied that branch of the plaintiff's motion which was for summary judgment against the carrier and granted the carrier's cross motion for summary judgment dismissing the complaint insofar as it is asserted against it.

On appeal, the plaintiff argues that the Supreme Court improperly denied that branch of its motion which was for summary judgment against the carrier and granted the carrier's cross motion for summary judgment dismissing the com-

plaint. Specifically, the plaintiff argues that it had an equitable lien on the proceeds of the fire insurance policy, and thus, the carrier was negligent in failing to name the plaintiff as a payee on the proceeds check. We disagree.

Although the plaintiff obtained an equitable lien on the proceeds of the insurance policy as a result of C&M Pizza's breach of the security agreement (see, Nor-Shire Assocs. v Commercial Union Ins. Co., 25 AD2d 868; Andrello v Nationwide Mut. Fire Ins. Co., 29 AD2d 489; Villano v Gable Professional Adjusters, 139 AD2d 957; 71 NY Jur 2d, Insurance, § 1845), we find that the carrier did not have a duty to investigate the legitimacy of the plaintiff's claim to the proceeds of the insurance policy, since the plaintiff was not a party to the insurance contract (see, McGraw-Edison Credit Corp. v Allstate Ins. Co., 62 AD2d 872). As this Court held in McGraw-Edison Credit Corp. v Allstate Ins. Co. (supra), a secured creditor is in the best position to police the enforcement of its agreement with its debtor with respect to insurance coverage on collateral. Therefore, we find that the Supreme Court properly granted the carrier's cross motion for summary judgment dismissing the complaint insofar as it is asserted against it. Thompson, J. P., Miller, and Pizzuto, JJ., concur.

Copertino, J., dissents and votes to reverse the order insofar as appealed from, on the law, to grant that branch of the plaintiff's motion which was for summary judgment against the defendant Investors Insurance Company of America, Inc., and to deny that defendant's motion for summary judgment, with the following memorandum: I respectfully dissent. The majority correctly recognizes the existence of an equitable lien on the policy proceeds in favor of the plaintiff (see, e.g., Nor-Shire Assocs. v Commercial Union Ins. Co., 25 AD2d 868). Nevertheless, it permits a defeat of that lien based on the absence of a duty on the part of the carrier to investigate the plaintiff's claim. I agree that an insurance company should not be burdened with investigating and acting on claims made by nonparties to the insurance contract. However, this does not relieve a carrier from preserving the funds until competing claims can be resolved, either by agreement of the competitors or by court action. Consequently, I cannot agree with the majority's conclusion.

Where one holds money owed to another who has assigned his rights to a third party, the holder is unaffected by the assignment and may pay his indebtedness to the assignor without incurring liability to the assignee—provided it is

ignorant of the assignment. However, if after notice of that assignment, it pays the assignor any money which, under the assignment, belongs to the assignee, or if it does anything prejudicial to the rights of the latter, that party is liable to the assignee for the resulting damage *(see, Poughkeepsie Sav. Bank v Sloane Mfg. Co.,* 84 AD2d 212, 216; *Becker v New Penn Dev. Corp.,* 269 App Div 395, 397). In the present case, the carrier paid the proceeds to the named insured in the face of an attorney's letter notifying it of an assignment. Specifically, counsel's April 13, 1988, letter stated as follows:

"Please be advised that I represent [plaintiff], assignee of the proceeds of the * * * fire insurance policy pursuant to a Security Agreement and Financing Statement (UCC-1) that was duly filed on April 9, 1987.

"Accordingly, take notice that none of the proceeds of said policy are to be paid to the insured unless the check is also to the order of my client as loss payee".

Although it may have been under no compulsion to investigate the bona fides of the representations contained in the letter, it was not free to ignore this facially valid notice altogether *(see, Poughkeepsie Sav. Bank v Sloane Mfg. Co., supra).* The correct response, and one which would have imposed no burden except prudence, was simply to withhold payment and inform the named insured of the competing claim. If the named insured had then insisted on payment or otherwise challenged the right of its competitor to the proceeds, the carrier would have been entitled to protect itself by way of an interpleader action *(see,* CPLR 1006; *Matter of Bernstein,* 156 AD2d 683, 684; *Bergman v Liverpool & London & Globe Ins. Co.,* 269 App Div 103, 104).

*McGraw-Edison Credit Corp. v Allstate Ins. Co.* (62 AD2d 872), relied upon by the majority, is inapposite and does not mandate the result reached by the majority. First, the plaintiff creditor in *McGraw-Edison Credit Corp.* did not have an equitable lien on the policy proceeds, as opposed to a lien on the property alone. This was so because the plaintiff's debtor had sold the subject equipment to a third party, and it was this third party which had procured fire insurance and was the sole payee. The Court noted that it could be inferred from the record that the sales agreement between the debtor and the third-party buyer insured did not contain a provision requiring the buyer to provide insurance coverage for the benefit of either the secured creditor or the selling debtor. It was the absence of such a requirement in favor of the secured

creditor which the Court held fatal to an equitable claim. Here, of course, the insured debtor had such an obligation.

Moreover, the Court in *McGraw-Edison Credit Corp.* held only that an obligation to make *direct payment* to the secured creditor would impose an unreasonable investigatory burden on the carrier. The case does not stand for the proposition that a carrier does not have a duty to *withhold* payment to the policy's named payee when a potentially valid, competing claim by the assignee under a security agreement is brought to its attention. The majority thus confuses a duty to investigate and pay a lienor on an asserted claim—which, as previously noted, I agree should not be imposed—with the simple obligation to pay no one until the competing claims are resolved. The *McGraw-Edison Credit Corp.* Court's additional statement regarding the secured creditor's superior ability to police the enforcement of its agreement with the debtor is no more than a perfectly reasonable reminder that it is the creditor's responsibility to take those steps necessary to insure its receipt of insurance proceeds. However, this is clearly distinct from the duty of the carrier to preserve those proceeds for the benefit of the party which ultimately prevails *(Poughkeepsie Sav. Bank v Sloane Mfg. Co., supra).*

In accord with the foregoing I conclude that the Supreme Court erred in dismissing the plaintiff's complaint against the carrier. Further, inasmuch as the plaintiff presented uncontroverted proof of its entitlement to the proceeds of the policy as an assignee thereof, and the carrier raised no triable issues of fact with regard to its receipt of the notice asserting such assignment and wrongful payment to the assignor, summary judgment should have been granted to the plaintiff. I therefore vote to reverse insofar as appealed from and to grant the plaintiff's motion as against the carrier.